425 S.E.2d 157

**Hazel HELDRETH and William Heldreth Plaintiffs Below, Appellants,**

v.

**Anthony R. MARRS and Mary J. Clark, Defendants Below, Appellees**

**No. 21124.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 16, 1992.

Decided Dec. 14, 1992.

---

Anthony R. Veneri, Princeton, for appellant.

Wade T. Watson, Sanders, Watson & White, for appellees.

McHUGH, Chief Justice:

The plaintiff, William Heldreth, appeals the order of the Circuit Court of Mercer County granting summary judgment in favor of the defendants, Anthony R. Marrs and Mary J. Clark, in a negligence action in which the plaintiff sought to recover, among other things, damages for negligent infliction of emotional distress. For reasons set forth herein, we conclude that the award of summary judgment should be reversed, and that this case should be remanded for further proceedings.

I.

On January 9, 1987, Mr. and Mrs. Heldreth were shopping at the Hill's Department Store in Mercer County, West Virginia. Upon leaving the store, Mr. and Mrs. Heldreth walked to their automobile which was located in the parking space closest to the store. While Mr. Heldreth, who preceded Mrs. Heldreth to their automobile, was placing his package into the trunk, Mrs. Heldreth stepped off the sidewalk toward their automobile. When she was approximately half way between the sidewalk and the automobile, Mrs. Heldreth was struck by another vehicle. When the vehicle hit Mrs. Heldreth, she screamed. The impact of the vehicle caused Mrs. Heldreth to be thrown into the air, and then to the ground.

When Mr. Heldreth heard his wife scream and realized that she had been hit by the car, he began to chase that car in an attempt to stop it as it left the parking lot. After failing to stop the vehicle, Mr. Heldreth returned to his wife. Mrs. Heldreth remained on the pavement of the parking lot for approximately five to ten minutes, until an ambulance arrived to take her to the hospital. While the ambulance transported Mrs. Heldreth to the hospital, Mr. Heldreth remained at the scene of the accident to take the names and addresses of witnesses. Mr. Heldreth then drove his automobile to the hospital and went to the emergency room to find his wife.

Upon arriving at the emergency room, Mr. Heldreth began experiencing chest pain and was hospitalized for suffering a heart attack.[1] Mr. Heldreth later underwent a cardiac catheterization on February 9, 1987, and a triple by-pass operation on March 4, 1987.

Mr. and Mrs. Heldreth initiated this action against the defendants alleging that their negligence caused Mrs. Heldreth to suffer soft tissue injuries, physical discomfort, extreme emotional distress and loss of consortium. The complaint also alleges that as a result of the defendants' negligence, Mr. Heldreth suffered extreme emo-

---

1. Mr. Heldreth had previously suffered a mild heart attack in 1979, another heart attack in 1983 and was taking medication for angina pectoris at the time of his wife's accident.

tional distress which proximately caused him to have a heart attack.

Following the defendants' motion for summary judgment with regard to Mr. Heldreth's claims, all parties agreed that the circuit court should certify to this Court the question of whether a plaintiff may state a cause of action for emotional distress and resulting physical injury caused by negligent conduct affecting a person closely related to the plaintiff where the plaintiff is at or near the accident but not in the "zone of danger." This Court, however, refused to grant the certified question. The circuit court ultimately granted the defendants' motion for summary judgment with respect to Mr. Heldreth's claims on the ground that West Virginia does not recognize a cause of action for negligent infliction of emotional distress. Mr. and Mrs. Heldreth appeal that decision.

## II.

The primary issues to be addressed in this case are whether a plaintiff should be allowed to recover for the negligent infliction of emotional distress from witnessing or having some sensory observation [2] of a person closely related to the plaintiff, suffer critical injury or death as a result of the defendant's negligence, and if so, what factors should be considered in determining whether it was reasonably foreseeable.

In prior decisions, this Court's view on the issue of plaintiff recovery for the negligent infliction of emotional distress has never been fully developed. In *Monteleone v. Co-Operative Transit Co.*, 128 W.Va. 340, 36 S.E.2d 475 (1945), this Court held that there can be no recovery in tort for emotional and mental trouble alone without ascertainable physical injuries arising therefrom, when the defendant's negligent conduct has caused no impact resulting in substantial bodily injury. Relying

upon *Monteleone*, we stated, in *Johnson v. West Virginia University Hospitals, Inc.*, 186 W.Va. 648, 651, 413 S.E.2d 889, 892 (1991) that, "*[a]s a general rule*, absent physical injury, there is no allowable recovery for negligent infliction of emotional distress." (emphasis added) We also expressed a reluctance in *Funeral Services by Gregory, Inc. v. Bluefield Community Hospital*, 186 W.Va. 424, 429, 413 S.E.2d 79, 84 (1991) to permit recovery for emotional distress absent an intentional tort. However, we noted in *Belcher v. Goins*, 184 W.Va. 395, 408, 400 S.E.2d 830, 843 (1990) and in *Harless v. First National Bank*, 169 W.Va. 673, 689, 289 S.E.2d 692, 702 (1982), although not central to the decision in those cases, that a cause of action for negligent infliction of emotional distress may lie where the plaintiff witnesses a physical injury to a closely related person, suffers mental anguish that manifests itself as a physical injury and is "within the zone of danger." [3]

The reason for allowing a plaintiff to recover for the negligent infliction of emotional distress was succinctly stated by the New Jersey Supreme Court in *Portee v. Jaffee*, 84 N.J. 88, 417 A.2d 521, 526 (1980):

No loss is greater than the loss of a loved one, and no tragedy is more wrenching than the helpless apprehension of the death or serious injury of one whose very existence is a precious treasure. The law should find more than pity for one who is stricken by seeing that a loved one has been critically injured or killed. [4]

The arguments given for not allowing a plaintiff to recover for negligent infliction of emotional distress were persuasively criticized by the Supreme Court of Pennsylvania in *Sinn v. Burd*, 486 Pa. 146, 404

---

**2.** By using the term "sensory observation," this Court is taking into account those cases where the plaintiff is present at the scene of the injury-producing accident and is aware that it is causing serious injury to or the death of the victim.

**3.** We will discuss the merits of the zone of danger rule in section E, *infra*.

**4.** The New Jersey Supreme Court's observation was also quoted by the Supreme Court of Nebraska in *James v. Lieb*, 221 Neb. 47, 375 N.W.2d 109, 113 (1985).

A.2d 672 (1979).[5] The Pennsylvania court identified five policy arguments as to why plaintiff recovery should not be allowed: (1) the difficulty of medical science to prove causation between claimed damages and alleged fright; (2) the fear of fraudulent or exaggerated claims; (3) the concern that to allow such a recovery will precipitate a flood of litigation; (4) the problem of unlimited and unduly burdensome liability; and (5) the difficulty of reasonably circumscribing the area of liability. 404 A.2d at 678.

In finding each of the foregoing arguments unconvincing, the Pennsylvania Supreme Court pointed out that the advancement of medical and psychiatric science had diminished the problems of proof associated with emotional distress cases through the development of psychiatric and diagnostic tests. 404 A.2d at 678–79. The Court further explained that the court system has the responsibility of weeding out fraudulent claims and that the mere fear of a flood of litigation was not sufficient to deny access to the courts. 404 A.2d at 679–81. The Court, relying on *Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758, 764 (1974), also pointed out that the concern for unlimited liability could be alleviated by limiting recovery only to those plaintiffs who experience very serious emotional distress. 404 A.2d at 683. Finally, the Court recognized that the area of liability could be reasonably circumscribed by adopting factors to determine the limits of plaintiff recovery. 404 A.2d at 681–85.

■ This Court believes that a plaintiff who witnesses or has a sensory observation of a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligence should be allowed to bring an action for negligent infliction of emotional distress. In order for this court to adopt a standard for establishing the degree of mental distress necessary to sustain a cause of action for negligent infliction of emotional distress, however, we must first reconcile our holding in *Monteleone, supra,* with the trend of other courts which have abandoned the rule prohibiting recovery absent physical injury. The rule stated in *Monteleone,* as it relates to this case, is, quite simply, outdated. The *Monteleone* court, relying on a case decided in 1899,[6] emphasized that *"[a]nxiety of mind and mental torture are too refined and too vague in their nature to be the subject of pecuniary compensation in damages,* except where, as in case of personal injury, they are so inseparably connected with the physical pain that they cannot be distinguished from it, and are therefore considered a part of it[.]"* 128 W.Va. at 351, 36 S.E.2d at 480 (emphasis in original).[7] However, the *Monteleone* court, in 1945, did not fully envision the advancements that were ultimately made in the medical and psychiatric sciences, which have been recognized by other courts, that have enabled physicians to diagnose serious emotional distress and identify malingers. *See Sinn v. Burd,* 404 A.2d at 678–79; David J. Leibson, *Recovery of Damages for Emotional Distress Caused by Physical Injury to Another,* 15 J.Fam.L. 163 (1976–77). Reliable medical evidence is available to weed out the fraudulent and trivial claims about which the *Monteleone* court was obviously concerned.[8]

■ Therefore, we conclude that a defendant may be held liable for negligently causing a plaintiff to experience serious emotional distress, after the plaintiff witnesses a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligent conduct, even though such distress did not result in physical injury, if the serious emotional distress was reasonably foreseeable. To

---

5. *See also Culbert v. Sampson's Supermarkets Inc.,* 444 A.2d 433, 436–37 (Me.1982).

6. *Davis v. Western Union Telegraph Co.,* 46 W.Va. 48, 53, 32 S.E. 1026, 1028 (1899).

7. The court acknowledged that it was committed to the doctrine adopted in *Lambert v. Brewster,* 97 W.Va. 124, 125 S.E. 244 (1924) which states that "a nervous shock without impact followed by harmful physical disturbances may be the basis of a recovery" in cases involving a defendant's wrongful or unlawful conduct.

8. We will discuss the issue of serious emotional distress further in section D, *infra.*

the extent that *Monteleone v. Co–Operative Transit Co.*, 128 W.Va. 340, 36 S.E.2d 475 (1945), is inconsistent with our holding in cases of plaintiff recovery for negligent infliction of emotional distress, it is overruled. The ability of a plaintiff to recover for this cause of action will be limited by certain factors which will be discussed *infra.*

### III.

Although this Court has never discussed what factors must be shown in order for a plaintiff to maintain a cause of action for negligent infliction of emotional distress, this issue has been the subject of much debate in other jurisdictions. *See, e.g., Thing v. La Chusa*, 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (Cal.1989); *Williams v. Baker*, 572 A.2d 1062 (D.C.Ct. App.1990); *Culbert v. Sampson's Supermarkets Inc.*, 444 A.2d 433 (Me.1982); *Dziokonski v. Babineau*, 375 Mass. 555, 380 N.E.2d 1295 (1978); *James v. Lieb*, 221 Neb. 47, 375 N.W.2d 109 (1985); *Corso v. Merrill*, 119 N.H. 647, 406 A.2d 300 (1979); *Bovsun v. Sanperi*, 61 N.Y.2d 219, 473 N.Y.S.2d 357, 461 N.E.2d 843 (1984); *Portee v. Jaffee, supra.* From our review of cases in other jurisdictions which have allowed a plaintiff to recover damages for negligent infliction of emotional distress, we have found five factors which have been considered by courts in establishing a test to determine whether a plaintiff may recover under this theory:

(1) whether the plaintiff is closely related to the injury victim;

(2) whether the plaintiff is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim;

(3) whether the victim is seriously or fatally injured;

9. For a collection of cases addressing the issue of the relationship between the bystander and the victim, see John S. Herbrand, Annotation, *Relationship Between Victim and Plaintiff–Witness as Affecting Right to Recover Damages in Negligence for Shock or Mental Anguish at Witnessing Victim's Injury or Death*, 94 A.L.R.3d 486 (1979).

(4) whether the plaintiff suffers emotional distress beyond that which would be anticipated in a disinterested witness; and

(5) whether the plaintiff was in the zone of danger so as to be subject of unreasonable risk of bodily harm created by defendant's negligent conduct.

In formulating our test to determine whether a plaintiff may recover for negligent infliction of emotional distress, we shall separately weigh the merits of each of the foregoing factors and consider the reasoning of courts in other jurisdictions which have adopted such tests.

### A.

### PLAINTIFF'S RELATIONSHIP TO THE VICTIM

One factor which courts agree must be included in the test is whether the plaintiff has a close relationship with the injury victim.[9] Courts have recognized that the relationship between the plaintiff and the injury victim is valuable in determining foreseeability, and therefore is an essential element in establishing liability. *James v. Lieb, supra; Portee v. Jaffee, supra; D'Ambra v. United States*, 114 R.I. 643, 338 A.2d 524 (1975).

In *James v. Lieb*,[10] the Supreme Court of Nebraska, in discussing the importance of the marital or familial relationship between the plaintiff and the injury victim, recognized that "medical authorities are generally in agreement that a mere bystander who has no significant relationship with the victim will not suffer the profound, systematic mental and emotional reaction likely to befall a close relative as a result of witnessing or learning of the victim's death." 375 N.W.2d at 115. To satisfy this element of the test, the *James* court chose not to require a relationship within a certain de-

10. In *James v. Lieb*, a boy and his sister were riding their bicycles when the sister was struck and killed by a garbage truck. As a result of watching his sister's death, the boy became physically ill, and began suffering mental anguish and emotional distress. His parents brought an action on his behalf against the driver of the truck and the truck's owner.

gree of "consanguinity,"[11] but instead decided to require that a marital or close familial relationship exist between the plaintiff and the injury victim. *Id.* The *James* court pointed out that although their decision would not exclude aunts, uncles and grandparents of an injury victim from bringing such actions, they would have a heavier burden of proving a significant attachment. *Id.*

We agree with the Supreme Court of Nebraska and other courts which have held that the plaintiff must have a close marital or familial relationship with the injury victim. Clearly, a plaintiff who witnesses a closely related person severely injured or killed by the negligence of another will experience a more profound emotional trauma than a plaintiff who has no relationship with the injury victim. It is the very nature of the relationship between the plaintiff and the victim which makes the emotional reaction experienced by the plaintiff so poignant. We shall therefore require, as one element of the test, that a close marital or familial relationship exist between the plaintiff and the victim.

## B.

### LOCATION OF PLAINTIFF AT THE TIME OF THE ACCIDENT

█ The location of the plaintiff at the time of the accident has been identified by courts as another essential element of the plaintiff test. *See, e.g., Dziokonski v. Babineau,* 380 N.E.2d at 1302; *Versland v. Caron Transport,* 206 Mont. 313, 671 P.2d 583, 586 (1983); *James v. Lieb,* 375 N.W.2d at 115–16; *Corso v. Merrill,* 406 A.2d at 307–08.[12] *See generally* P.G. Guthrie, An-

notation, *Right to Recover Damages in Negligence for Fear of Injury to Another, or Shock or Mental Anguish at Witnessing Such Injury,* 29 A.L.R.3d 1337 § 6.5 (Supp.1992). In fact, the physical location of the plaintiff at the time of the accident has been deliberated by the Supreme Court of California in two precedential decisions, *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968) and *Thing v. La Chusa,* 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (1989).

The case of *Dillon v. Legg*[13] involved an action for emotional distress brought by a mother who witnessed a driver of a vehicle strike and kill her infant daughter. The Supreme Court of California, in reversing the lower court's order granting summary judgment against the mother, adopted a three-factor test for determining foreseeability: (1) whether the plaintiff was located near the scene of the accident as contrasted with one who is far away; (2) whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observation of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) whether the plaintiff and victim were closely related. 69 Cal.Rptr. at 80, 441 P.2d at 920. The Court explained the importance of the plaintiff's location at the time of the accident with respect to the issue of foreseeability:

> [O]bviously defendant is more likely to foresee that a mother who observes an accident affecting her child will suffer harm than to foretell that a stranger witness will do so. Similarly, the degree of foreseeability of the third person's injury is far greater in the case of his contemporaneous observance of the acci-

---

**11.** In reaching its decision "not to require a relationship within a certain degree of consanguinity," the Supreme Court of Nebraska cited the holding of the Iowa Supreme Court in *Barnhill v. Davis,* 300 N.W.2d 104 (Iowa 1981). 375 N.W.2d at 115. In *Barnhill v. Davis,* the Iowa Supreme Court held, as one of four elements of a bystander's claim, that "[t]he bystander and the victim were husband and wife or related within the second degree of consanguinity or affinity." 300 N.W.2d at 108.

**12.** We note that these cases were decided prior to the Supreme Court of California's decision in

*Thing v. La Chusa,* 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (1989), discussed *infra,* and that they rely on the sensory and contemporaneous observation rule established in *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), *infra.*

**13.** In *Dillon v. Legg,* the Supreme Court of California was the first to abandon the zone of danger rule, which it had adopted in *Amaya v. Home Ice, Fuel & Supply Co.,* 59 Cal.2d 295, 29 Cal.Rptr. 33, 379 P.2d 513 (1963), for a three-factor test to determine foreseeability.

dent than that in which he subsequently learns of it. The defendant is more likely to foresee that shock to the nearby, witnessing mother will cause physical harm than to anticipate that someone distant from the accident will suffer more than a temporary emotional reaction.

69 Cal.Rptr. at 81, 441 P.2d at 921. The *Dillon* court anticipated that the limits of negligent infliction of emotional distress actions would be further defined in later cases.

The *Dillon* court, however, did not anticipate the uncertainty that was created by later decisions, especially with respect to the issue of the location of the plaintiff at the time of the accident. Later decisions expanded the *Dillon* guidelines, for example, by not requiring the plaintiff to "visually" perceive the accident. *Nazaroff v. Superior Court*, 80 Cal.App.3d 553, 145 Cal.Rptr. 657 (1978); *Krouse v. Graham*, 19 Cal.3d 59, 137 Cal.Rptr. 863, 562 P.2d 1022 (1977); *Archibald v. Braverman*, 275 Cal.App.2d 253, 79 Cal.Rptr. 723 (1969). The uncertainty created by these later cases prompted the Supreme Court of California to clarify the rights to recover for negligent infliction of emotional distress in *Thing v. La Chusa*, 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (1989).

The *Thing* court reevaluated the concept of contemporaneous observance of the accident, and adopted the requirement that the plaintiff be present at the scene of the accident and aware that it is causing injury to the victim. The Court gave the following explanation for this modification:

> The impact of personally observing the injury-producing event in most, although concededly not all, cases distinguishes the plaintiff's resultant emotional distress from the emotion felt when one learns of the injury or death of a loved one from another, or observes pain and suffering but not the traumatic cause of the injury. Greater certainty and a more reasonable limit on the exposure to liability for negligent conduct is possible by limiting the right to recover for negligently caused emotional distress to plain-

tiffs who personally and contemporaneously perceive the injury-producing event and its traumatic consequences.

257 Cal.Rptr. at 879, 771 P.2d at 828. The *Thing* court then held that the plaintiff in the case, whose child was injured by an automobile, could not recover damages for emotional distress from the driver of the vehicle which struck the child because she was not present at the scene of the accident and was not aware that her son was being injured.

Having the benefit of the *Thing* court's hindsight, we too adopt the requirement that a plaintiff in a negligent infliction of emotional distress action is present at the scene of the injury-producing event at the time it occurs and is aware that it is causing injury to the victim.

### C.

### INJURY TO VICTIM

The third factor which has been considered by courts in establishing the proof necessary to maintain a cause of action for negligent infliction of emotional distress is whether the victim is critically injured or killed. Courts have required that the victim suffer a critical injury or death before a plaintiff can bring a cause of action for negligent infliction of emotional distress. *See, e.g., James v. Lieb*, 375 N.W.2d at 116; *Ramirez v. Armstrong*, 100 N.M. 538, 673 P.2d 822 (1983); *Portee v. Jaffee*, 417 A.2d at 527–28.

The importance of the requirement that the victim suffer critical injury or death was articulately explained by the Supreme Court of New Jersey in *Portee v. Jaffee, supra*. In adopting the requirement that the victim suffer a critical injury or death, the Supreme Court of New Jersey recognized the trauma which accompanies the plaintiff's observation of the death or serious injury of a person closely related to the plaintiff:

> While any harm to a spouse or a family member causes sorrow, we are here concerned with a more narrowly confined interest in mental and emotional stability. When confronted with accidental

death, 'the reaction to be expected of normal persons,' ... is shock and fright.... [T]he observation of either death or this type of serious injury is necessary to permit recovery. Since the sense of loss attendant to death or serious injury is typically not present following lesser accidental harm, perception of less serious harm would not ordinarily result in severe emotional distress. Thus, the risk of an extraordinary reaction to less serious injury is not sufficient to result in liability. To impose liability for any emotional consequence of negligent conduct would be unreasonable; it would also be unnecessary to protect a plaintiff's basic emotional stability. Therefore, a cause of action for emotional distress would require the perception of death or serious physical injury.

417 A.2d at 528 (citation omitted).

We believe that the Supreme Court of New Jersey's reasons for this requirement are sound. Although minor injuries to a closely related person may evoke feelings of concern, such emotions do not rise to the level of the anguish and disbelief that a plaintiff may experience after witnessing the critical injury to or death of one to whom the plaintiff is closely related. Therefore, in addition to the other factors stated above, we hold that the emotional trauma alleged by a plaintiff must be the direct result of either the critical injury to or death of a person closely related to the plaintiff.

### D.

### DEGREE OF PLAINTIFF'S EMOTIONAL DISTRESS

■ Another crucial element of the test is the requirement that the plaintiff experience emotional distress beyond that which would be anticipated in a disinterested witness. There is disagreement among courts, however, as to whether some physical injury must result from the emotional

distress. *See, e.g., Leong v. Takasaki,* 55 Haw. 398, 520 P.2d 758, 762 (1974) (physical injury requirement ˋis "artificial" and should be used only to show degree of emotional distress); [14] *Barnhill v. Davis,* 300 N.W.2d at 107–08 (physical manifestations of distress required); *Lejeune v. Rayne Branch Hospital,* 556 So.2d 559, 570 (La.1990) (recovery should be allowed only where the emotional injury is both severe and debilitating); *Culbert v. Sampson's Supermarkets Inc.,* 444 A.2d at 438 (proof of physical manifestations of the mental injury is no longer required); *Corso v. Merrill,* 406 A.2d at 304 (harm for which plaintiff seeks to recover must be susceptible to some form of objective medical determination and proved through qualified medical witnesses); *Folz v. State,* 110 N.M. 457, 797 P.2d 246, 259 (1990) (physical manifestation should not be the sine qua non by which to establish damages resulting from emotional trauma); *Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759, 765 (1983) (examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia); *Reilly v. United States,* 547 A.2d 894 (R.I.1988) (plaintiff must suffer physical symptomatology to recover for negligent infliction of emotional distress).

In *Barnhill v. Davis, supra,* the Supreme Court of Iowa discussed the importance of ensuring that a plaintiff's claim for emotional distress is serious. The court believed that "every minor disturbance to a person's mental tranquillity" cannot be compensated. 300 N.W.2d at 107. Instead, the court reasoned that "[w]hile ... mental distress may exist without objective physical symptoms, compensable mental distress should ordinarily be accompanied with physical manifestations of the distress." 300 N.W.2d at 107–08.

The Supreme Court of Ohio in *Paugh v. Hanks,* however, found that the physical injury rule was too ˙inflexible, and that the

---

**14.** The *Leong* court attempted to adopt an objective standard by recognizing a rule that serious emotional distress may be properly found where a reasonable person "normally constitut- ed, would be unable to adequately cope with the mental stress engendered by the circumstances" of the case. 520 P.2d at 764.

standard of "serious" emotional distress was a more reliable safeguard. The Supreme Court of Ohio explained what it meant by using the term "serious":

> By the term 'serious,' we of course go beyond trifling mental disturbance, mere upset or hurt feelings. We believe that serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.

451 N.E.2d at 765 (emphasis added).

The *Paugh* court further stated that "a rigid requirement which prevents a plaintiff from recovering from serious emotional harm except where a physical injury manifestation has ensued, completely ignores the advances made in modern medical and psychiatric science[.]" 451 N.E.2d at 765. The court further pointed out that "[s]erious emotional distress can be as severe and debilitating as physical injury and is no less deserving of redress." *Id.* Finally, the court, relying on *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 167 Cal. Rptr. 831, 841, 616 P.2d 813, 823 (1980), gave examples of serious emotional distress such as traumatically induced neurosis, psychosis, chronic depression, or phobia. *Id.*

We believe that the points made by the Supreme Court of Ohio in *Paugh v. Hanks* cannot be overlooked. Serious emotional distress which results from witnessing a closely related person critically injured or killed can be, in some cases, as debilitating and as severe as a physical injury. More importantly, serious emotional distress can be diagnosed even in the absence of any physical manifestation, and can be proven with medical and psychiatric evidence. Furthermore, any physical injury resulting from the emotional distress is further evidence of the degree of emotional distress suffered. *Paugh v. Hanks*, 451 N.E.2d at 765.

■ As a final point, we believe, in determining the "seriousness" of the emotional distress, consideration should also be given to whether the particular plaintiff is a "reasonable person, normally constituted." More specifically, we recognize that the *Paugh* court found that "serious emotional distress may be found where a *reasonable person, normally constituted,* would be unable to cope adequately with the mental distress engendered by the circumstances of the case." 451 N.E.2d at 765 (citations omitted) (emphasis added); *see also Molien v. Kaiser Foundation Hospitals, supra.*[15] A "reasonable person," in this context, has been found to be an "ordinarily sensitive person and not the supersensitive, 'eggshell psyche' plaintiff." *Salley v. Childs*, 541 A.2d 1297, 1300 n. 4 (Me.1988); *Gammon v. Osteopathic Hospital of Maine, Inc.*, 534 A.2d 1282, 1285 (Me.1987). The Supreme Judicial Court of Maine in *Theriault v. Swan*, 558 A.2d 369, 372 (Me.1989)[16] explained what a plaintiff must demonstrate regarding the "ordinarily sensitive person" standard:

> In order to recover for either negligent or reckless infliction of emotional distress, a plaintiff must demonstrate that the harm alleged reasonably could have been expected to befall the ordinarily sensitive person. *Gammon v. Osteopathic Hospital of Maine, Inc.*, 534 A.2d 1282, 1285 (Me.1987). When the harm reasonably could affect only the hurt feelings of the supersensitive plaintiff-the eggshell psyche-there is no entitlement to recovery. *Id.* If, however, the

---

**15.** Some commenters have taken issue with the *Molien* formulation (whether a reasonable person, normally constituted, would be unable to cope with the mental distress engendered by the circumstances of the case), which they believe suggests that the "thin skull plaintiff" rule applicable to physical injury should be abandoned when it comes to emotional injury. *Ochoa v. Superior Court*, 39 Cal.3d 159, 216 Cal.Rptr. 661, 675 n. 2, 703 P.2d 1, 15 n. 2 (1985) (Grodin, J., concurring), citing Virginia E. Nolan & Edmund Ursin, *Negligent Infliction of Emotional Distress: Coherence Emerging from Chaos*, 33 Hastings L.J. 583, 616–17 n. 188 (1982).

**16.** We note that *Theriault* involved an action for property damage and reckless and negligent infliction of emotional distress.

harm reasonably could have been expected to befall the ordinarily sensitive person, the tortfeasor must take his victim as he finds her, extraordinarily sensitive or not. *Restatement (Second) of Torts* § 461 (1975).

The reasonableness of the plaintiff's reaction to the event will normally be a jury question, as recognized by the Supreme Court of Washington in *Hunsley v. Giard*, 87 Wash.2d 424, 553 P.2d 1096, 1103 (1976): [17]

> Fear, fright or distress for the peril of another poses a troublesome problem, yet provides another safeguard against boundless liability. We decline to draw an absolute boundary around the class of persons whose peril may stimulate the mental distress. This usually will be a jury question bearing on the reasonable reaction to the event unless the court can conclude as a matter of law that the reaction was unreasonable.

■ As we pointed out earlier in this opinion, a defendant may be held liable for negligently causing a plaintiff to experience serious emotional distress, after the plaintiff witnesses a person closely related to the plaintiff suffer a critical injury or death as a result of the defendant's negligent conduct, even though such distress did not result in physical injury, if the serious emotional distress was reasonably foreseeable. We emphasize, however, that in addition to showing that the plaintiff's emotional distress was reasonably foreseeable, and that a cause and effect relationship between the emotional distress and the accident existed, the plaintiff must also prove the *seriousness* of the emotional distress through the use of medical and psychiatric evidence. The plaintiff will also have to demonstrate that the harm alleged

reasonably could have been expected to befall the ordinarily reasonable person. Moreover, in addition to the serious nature of the emotional distress, the plaintiff will also have to prove the other factors outlined in this opinion. Finally, our holding is limited to those cases involving a plaintiff's recovery for negligent infliction of emotional distress after witnessing or contemporaneously observing the critical injury or death of a person closely related to the plaintiff.

### E.

### ZONE OF DANGER RULE

■ The most controversial factor adopted by some courts is the rule requiring that the plaintiff be in the zone of physical danger of the defendant's negligent conduct. Proponents of the zone of danger rule [18] assert that such a rule is an objective test and provides clear limits on the liability to the plaintiff. *See, e.g., Keck v. Jackson*, 122 Ariz. 114, 593 P.2d 668, 669–70 (1979); *Williams v. Baker*, 572 A.2d at 1067–68; *Asaro v. Cardinal Glennon Memorial Hospital*, 799 S.W.2d 595, 599 (Mo.1990); *Bovsun v. Sanperi*, 473 N.Y.S.2d at 360–63, 461 N.E.2d at 846–49. However, critics of the zone of danger rule regard it as arbitrary, restrictive and unfair. *See, e.g., Dillon v. Legg*, 69 Cal.Rptr. at 75, 441 P.2d at 915; *Barnhill v. Davis*, 300 N.W.2d at 107; *Culbert v. Sampson's Supermarkets Inc.*, 444 A.2d at 436; *Corso v. Merrill*, 406 A.2d at 306; *Sinn v. Burd*, 404 A.2d at 677–78.

The zone of danger rule was best described by the Court of Appeals of New York in *Bovsun v. Sanperi*, 473 N.Y.S.2d at 361, 461 N.E.2d at 847: [19]

**17.** In *Hunsley*, the plaintiff brought a cause of action to recover for physical heart damage allegedly resulting from emotional distress inflicted by the defendant's car striking and invading plaintiff's home outside of her immediate presence and without immediate physical impact to her. The court held that the issue of whether the plaintiff's reaction was that of a reasonable person, normally constituted was a question of fact for the jury.

**18.** The zone of danger rule was adopted by the *Restatement (Second) of Torts* § 313 (1965).

**19.** The *Bovsun* case involved two appeals. In the first case, the parents and sister of an injured child brought a negligence action to recover for their physical injuries and also for the emotional trauma they suffered as the result of their child's injuries and death. The other case involved a mother and daughter who only suf-

It is premised on the traditional negligence concept that by unreasonably endangering the plaintiff's physical safety the defendant has breached a duty owed to him or her for which he or she should recover all damages sustained including those occasioned by witnessing the suffering of an immediate family member who is also injured by the defendant's conduct. Recognition of this right to recover for emotional distress attributable to observation of injuries suffered by a member of the immediate family involves a broadening of the duty concept but—unlike the *Dillon* approach—not the creation of a duty to a plaintiff to whom the defendant is not already recognized as owing a duty to avoid bodily harm. In so doing it permits recovery for an element of damages not heretofore allowed. Use of the zone-of-danger rule thus mitigates the possibility of unlimited recovery[.]

However, not all courts agree with the Court of Appeals of New York's characterization of the effectiveness of the zone of danger rule. For example, the Supreme Court of Pennsylvania, after adopting the zone of danger rule in *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970), abandoned it in *Sinn v. Burd*, and sharply criticized the harshness of the rule:

[E]xperience has taught us that the zone of danger requirement can be unnecessarily restrictive and prevent recovery in instances where there is no sound policy basis supporting such a result. It has unquestionably not been effective in every instance of assuring that one may 'seek redress for every substantial wrong.' The restrictiveness of the zone of danger test is glaringly apparent where it is allowed to deny recovery to a parent who has suffered emotional harm from witnessing a tortious assault upon the person of his or her minor child. A majority of the commentators and a

growing number of jurisdictions have considered this problem in recent years and have concluded that it is unreasonable for the zone of danger requirement to exclude recovery in such cases.

This new awareness of the unfairness of the zone of danger requirement in these cases is based upon the implicit acceptance that the emotional impact upon a parent witnessing the killing of a minor child is at least as great and as legitimate as the apprehension that is inspired by a plaintiff being personally within the zone of danger.

404 A.2d at 677 (footnotes omitted).

The *Sinn* court further asserted that the zone of danger requirement "creates the very evil that the test was designed to eliminate, i.e., arbitrariness." 404 A.2d at 678. The court pointed out that recovery under the rule depends upon the location of the plaintiff at the time of the accident, and "ignores that the emotional impact was most probably influenced by the event witnessed—serious injury to or death of the child—rather than the plaintiff's awareness of personal exposure to danger." *Id.*

Instead of using the zone of danger requirement to avoid unlimited liability or fraudulent or trivial claims, the Supreme Court of Pennsylvania and other courts, following the direction of the *Dillon* court,[20] premised the plaintiff's right of recovery on the traditional test of foreseeability. Under this traditional negligence test, a plaintiff is required to prove that his or her injury was foreseeable, that the defendant's negligence caused the critical injury to or death of the victim, and that the plaintiff suffered serious emotional distress as a direct result of observing the critical injury to or death of the victim. *See Corso v. Merrill*, 406 A.2d at 306. The factors set forth in *Dillon* for determining foreseeability and liability were used as a model for those courts which rejected the zone of danger requirement.

---

fered minor injuries in the accident and filed suit to recover for emotional distress they suffered when the father was seriously injured in the same accident. The court held that where a defendant negligently exposes a plaintiff to an unreasonable risk of bodily injury or death, the plaintiff may recover damages for injuries suf-

fered in consequence of the observation of the serious injury or death of a member of plaintiff's family if the defendant's negligence was a substantial factor in bringing about the injury or death.

**20.** *See* section B, *supra.*

We too reject the zone of danger requirement as restrictive and harsh. In these types of cases, the plaintiff's serious emotional distress is usually not caused by the plaintiff's fear for his or her own personal safety, but by witnessing a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligent act. To require that the plaintiff must be within the zone of physical danger of the defendant's negligent conduct and fear for his or her own safety in order to recover for the serious emotional distress blatantly ignores the very cause of the plaintiff's emotional distress. Public policy compels us to reject a requirement which would deny liability solely on the basis that a plaintiff is not within the zone of physical danger. In rejecting the zone of danger requirement in this context, we find that basing recovery in negligent infliction of emotional distress cases on our traditional negligence principles of duty and foreseeability [21] will reasonably restrict a defendant's liability in such cases.

In summary, we hold that, a plaintiff's right to recover for the negligent infliction of emotional distress, after witnessing a person closely related to the plaintiff suffer critical injury or death as a result of defendant's negligent conduct, is premised upon the traditional negligence test of foreseeability. A plaintiff is required to prove under this test that his or her serious emotional distress was reasonably foreseeable, that the defendant's negligent conduct caused the victim to suffer critical injury or death, and that the plaintiff suffered serious emotional distress as a direct result of witnessing the victim's critical injury or death. In determining whether the serious emotional injury suffered by a plaintiff in a negligent infliction of emotional distress action was reasonably foreseeable to the defendant, the following factors must be evaluated: (1) whether the plaintiff was closely related to the injury victim; (2) whether the plaintiff was located at the scene of the accident and is aware that it is causing injury to the victim; (3) whether the victim is critically injured or killed; and (4) whether the plaintiff suffers *serious* emotional distress.

### III.

We shall briefly summarize the deposition testimony in the present case that relates to the factors which must be shown to establish a cause of action for negligent infliction of emotional distress. To begin with, Mr. Heldreth stated that his condition of health before his wife's accident was good, although he was taking medication for his heart [22] and his arthritis. At the time Mr. Heldreth's wife was struck by the car, he stated that he was closing the trunk of his car after placing a package in it. When he heard his wife scream, he turned around and saw her "hit the pavement." Mr. Heldreth then proceeded to run after the car that struck his wife for approximately twenty feet, and when he was unable to stop the car, he returned to his wife. Mr. Heldreth drove his own car to the hospital a few minutes after the ambulance arrived to transport his wife. Mr. Heldreth stated that he felt chest pain and pressure building up in his heart, and experienced a heart attack upon arriving at the hospital.

Mrs. Heldreth stated in her deposition that the car struck her left hip area, knocked her in the air and turned her around onto her right side. She did not see the car before it struck her. Mrs. Heldreth did not suffer any fracture or critical physical injury from being struck by the car, but she stated that she has experienced back pain ever since the accident.

After Mr. Heldreth's examination in the emergency room following his wife's accident, he was admitted to the hospital under the care of his regular physician, who then contacted Anil B. Agarwal, M.D., a cardiologist, for a consultation. In his deposition, Dr. Agarwal stated that, prior to his wife's

---

21. In *Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563 (1983), we reviewed our traditional analysis of a negligence action and also discussed *Dillon v. Legg, supra. See also James G. v. Caserta*, 175 W.Va. 406, 414 n. 17, 332 S.E.2d 872, 880 n. 17 (1985).

22. Mr. Heldreth testified that, from 1983 until the time of the accident, he suffered from angina and wore a nitroglycerin patch for chest pain.

accident, Mr. Heldreth suffered from coronary artery disease.[23] Dr. Agarwal stated that he believed Mr. Heldreth's heart attack was caused by witnessing his wife being struck by a car, and that Mr. Heldreth's subsequent heart surgery "was necessitated by the heart attack." Dr. Agarwal also acknowledged on cross-examination that the subsequent surgery Mr. Heldreth underwent after the accident "would relieve his symptoms of angina, and it may decrease, to some degree, his chances of having another heart attack."

We cannot say that, based upon the evidence summarized above, Mr. Heldreth can satisfy the elements of the test for negligent infliction of emotional distress we adopt in this opinion. However, the circuit court, in reaching its decision in the case now before us, did not have the benefit of the standards we adopted herein and therefore, we conclude that the summary judgment awarded the appellees was improper. Thus, we reverse the order of the circuit court and remand this case with directions that the circuit court follow the principles set forth in this opinion.

Reversed and remanded.

**23.** Dr. Agarwal testified that Mr. Heldreth suffered from angina pectoris.