IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

FILED

October 7, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| MITCHELL BRIAN RAMSEY, | ) | **FOR PUBLICATION** |
| | ) | |
| Plaintiff/Appellant, | ) | **Filed: October 7, 1996** |
| | ) | |
| v. | ) | Hamilton County |
| | ) | |
| JAMES G. BEAVERS, | ) | Hon. Samuel H. Payne, Judge |
| | ) | |
| Defendant/Appellee. | ) | No. 03S01-9509-CV-00104 |

For Appellant:

Mark T. Young
Hixson, TN

For Appellee:

Thomas A. Williams
LEITNER, WARNER, MOFFITT,
WILLIAMS, DOOLEY &
NAPOLITAN
Chattanooga, TN

**O P I N I O N**

COURT OF APPEALS AND
TRIAL COURT REVERSED                    WHITE, J.

In this case we are faced with the issue of the continued viability of the zone of danger test as a limitation on liability when plaintiff is neither physically injured nor in an area where physical injury is possible. We conclude that in cases such as this, in which plaintiff sensorily observes the injury and resulting death of his mother, recovery should be allowed under circumstances in which the incident which produces the emotional injuries and the emotional injuries are reasonably foreseeable.

Mitchell Ramsey and his mother were traveling on Highway 58 in Hamilton County, Tennessee. Ramsey's mother, who was driving the car, pulled into Ramsey's driveway and got out of the car to check the mailbox while Ramsey remained seated in the rear driver's side seat.

Defendant James Beavers was driving his vehicle north on Highway 58. His vehicle left the traveling portion of the roadway and struck Ramsey's mother. According to Ramsey, he heard the tires of Beaver's car in the gravel as it left the roadway. Just as he looked, he witnessed his mother being struck by the car.

Ramsey's complaint details the distances between the automobile in which he was seated, the mailbox, and the point at which his mother was struck. He alleged that "at the time of the accident [he] feared for [his] own personal safety due to the close proximity [of the vehicle]." In an amended complaint, Ramsey alleged that he suffered fright, shock, and emotional suffering as a result of his fear. He also claimed to suffer "physical pain and

suffering resulting from witnessing his mother's death."

Defendant answered and moved for summary judgment.[1] In his motion defendant contended that since "plaintiff was not in immediate threat of physical harm [sic] he was not within the 'zone of danger' and therefore may not recover for the injuries claimed." The trial court agreed and sustained the motion dismissing the case. A motion to reconsider was denied and plaintiff appealed.

On appeal, the Court of Appeals, Eastern Division, affirmed the judgment of the trial court noting the limited circumstances under which a party may recover for negligent infliction of emotional distress. Specifically the court relied on Shelton for its holding that a plaintiff may not recover for injuries resulting from psychic injury caused by concern for the welfare of a third person who is injured or threatened with injury by another's negligence. Thus, the court concluded that "in order to succeed the plaintiff here must demonstrate that his claim relates to fear for his own personal safety and not for that of his mother."

As both parties have noted in briefs and at oral argument, our recent decision in Camper v. Minor impacts the result we reach here. Nonetheless, we begin our analysis seventy years ago.

In 1927 in the case of Nuckles v. Tenn. Elec. Power Co., 299 S.W.

_____

[1] An earlier filed motion to dismiss for failure to state a claim was denied when plaintiff filed his amended complaint.

3

775 (Tenn. 1927), this Court declared that "there can be [no] recovery for fright or shock because of danger to another or injuries upon another in the presence of the plaintiff, even though the person imperiled or injured was near and dear to the plaintiff . . . ." 299 S.W. at 775. Our justification for that wording was stated succinctly: "to justify a recovery in court, there must be a wrong done to the person or property of the plaintiff." Id.

Subsequently, in Shelton v. Russell Pipe and Foundry Co., 570 S.W.2d 861 (Tenn. 1978), a case in which a father attempted to recover for emotional distress suffered when he was told at the emergency room of disfiguring injuries to his daughter, we returned to the rule enunciated in Nuckles. While recognizing that the Nuckles rule might need modification "so as to permit a recovery by a close relative who visually or audibly witnesses an accident [involving] one 'near or dear . . . ,' " such a situation was not present in Shelton. Rather, in Shelton, the father's distress resulted from his being told of his daughter's injuries, not from seeing or hearing them occur. Thus, we left the Nuckles rule intact because of the lack of foreseeability that harm "would come to one outside the zone of danger and because of the lack of fairness in a rule which would impose liability for psychic injuries to one outside the zone of danger." Id. at 866.

The Shelton analysis illustrates the concern of many courts which have tampered with and modified the inflexible zone of danger rule. Once the rule is modified, either by enlarging the so-called zone of danger or by creating exceptions for injuries witnessed or injuries to those related to

4

plaintiff, potential liability seems limitless. Additionally, the difficulty in assessing and verifying the type and extent of injuries involved is staggering. Psychic injuries including fright, shock, and distress, when detached from any physical counterpart, are highly subjective and difficult to quantify.

While noting the difficulties that moving away from the inflexible zone of danger of physical impact rule include, we are equally quick to note the imperfections in that rule as well. The zone of danger is rarely concrete. Its location is subject to interpretation. Furthermore, very real injuries may be suffered by those outside the zone of danger, but close to a traumatic, emotive event involving a close relative.

Very recently we revisited this interesting, but difficult, area of the law in Camper v. Minor, 915 S.W.2d 437 (Tenn. 1996). In Camper, the driver of a cement truck sued to recover for the emotional distress he suffered when he viewed the body of a deceased motorist who had pulled into the path of his truck. Camper had experienced only minor physical injuries - a scraped knee. The trial court denied the motion for summary judgment utilizing the meager, but existent, physical injury and the plaintiff's actual involvement in the accident, to distinguish the case from Shelton. Because of the importance of the issue, the trial judge granted an interlocutory appeal.

On appeal, the Court of Appeals reversed and sustained defendant's

5

summary judgment motion. That court reasoned that the allegations of the complaint failed to state a cause of action because plaintiff failed to prove that he feared for his own safety or that he had a close relationship with the deceased.

In an opinion containing an excellent, historical analysis, Justice Drowota tracked the development of the law of negligent infliction of emotional distress nationally and in the Tennessee courts. He aptly pointed out that our law had become garbled and confused as the courts attempted to apply rigid tests, then modified the tests to reach just results.

As part of his review, Justice Drowota addressed the zone of danger test which serves to limit liability and on which defendant in this action relies. That test, as defendant urges, and as applied in Tennessee, requires that a plaintiff desiring to recover for emotional injuries establish either that he or she sustained a physical injury along with the emotional one, or that he or she was placed in immediate danger of physical harm and, contemporaneously, feared for his or her own physical safety. Additionally, the Tennessee zone of danger rule requires that plaintiff be closely related to the actual injured party. See Burroughs v. Jordan, 456 S.W.2d 652 (Tenn. 1970).

Notwithstanding these two prerequisites to recovery under the zone of danger approach, both of which were notably missing in Camper, we reversed the grant of summary judgment in that case. Recognizing the

6

inconsistency of our previous patchwork approach, we adopted a general

negligence approach which required that plaintiff prove the five elements of

negligence and prove by expert testimony that the emotional injury suffered

is serious or severe. Specifically, we held that the physical manifestation or

injury rule

> shall no longer be used to test the validity of a
> prima facie case of negligent infliction of
> emotional distress. . . . [T]he plaintiff must present
> material evidence as to each of the five elements
> of general negligence . . . in order to avoid
> summary judgment. Furthermore, . . . in order to
> guard against trivial or fraudulent actions, the law
> ought to provide a recovery only for "serious" or
> "severe" emotional injury.

Camper v. Minor, 915 S.W.2d at 446. In shifting to this general negligence

approach, we clearly vitiated the previous rigid rule that required the

presence or fear of physical injury before emotional injuries could be

compensated.


In declining to follow further the rigid, unworkable physical injury or

physical manifestation rule, however, we did not necessarily obviate the

entire zone of danger test. As Justice Drowota noted:

> We do not . . . necessarily abandon the "zone of
> danger" approach used in Shelton. Indeed, since
> the "zone of danger" approach is, in reality, merely
> a way of defining and limiting the elements of
> duty and proximate or legal cause, the principles
> of the approach can likely be integrated into the
> general negligence framework. The specifics of
> such an integration must, however, await an
> appropriate case.

915 S.W.2d at 446 n. 2.

7

This is that appropriate case. Under the strict zone of danger approach outlined in <u>Shelton</u>, Ramsey's case would likely fail. Although the parties are not wholly consistent in their statement of the facts, at the very least, the case would be remanded to the trier of fact to determine whether plaintiff's fear for his physical safety was reasonable.

We decline in light of <u>Camper</u> to return to the often semantical approach of <u>Shelton</u>. Rather, as we did in <u>Camper</u>, we modify existing law to more fairly and consistently set forth a test. Rather than focusing on subjective statements of fear or surmised conclusions of whether one's physical location is within the zone of danger, we hold that in the future liability shall be determined by application of general negligence law as set forth in this opinion.

The general negligence approach adopted for determination of cases involving emotional injuries requires that plaintiff establish each of the five elements of negligence - duty, breach of duty, injury or loss, causation in fact, and proximate causation. While we reject the rigid zone of danger approach set forth in <u>Shelton</u>, that rejection serves only to dissolve rigid, often nonsensical, physical injury and contemporaneous fear requirements. It does not reduce or lessen plaintiff's obligation to establish that the emotional injuries suffered were factually and legally caused by the breach of a duty owed to plaintiff by a defendant.

We, therefore, hold that to recover for emotional injuries sustained as

8

a result of death or injury of a third person, plaintiff must establish that defendant's negligence was the cause in fact of the third person's death or injury as well as plaintiff's emotional injury. Secondly, plaintiff must establish that the third person's death or injury and plaintiff's emotional injury were proximate and foreseeable results of defendant's negligence.

Establishing foreseeability, and therefore a duty of care to plaintiff, requires consideration of a number of relevant factors. The plaintiff's physical location at the time of the event or accident and awareness of the accident are essential factors. Obviously, it is more foreseeable that one witnessing or having a sensory observation[2] of the event will suffer effects from it. As has been explained:

> The impact of personally observing the injury-producing event in most, although concededly not all, cases distinguishes the plaintiff's resultant emotional distress from the emotion felt when one learns of the injury or death of a loved one from another, or observes pain and suffering but not the traumatic cause of the injury.

Thing v. La Chusa, 771 P.2d 814, 828 (Ca. 1989). Thus, plaintiff must establish sufficient proximity to the injury-producing event to allow sensory observation by plaintiff.

A second factor is the degree of injury to the third person. We agree with the New Jersey Supreme Court's analysis of this factor:

> While any harm to a spouse or a family member causes sorrow, we are here concerned with a more

---

[2]The term "sensory observation" is used to allow, under circumstances in which all prerequisites are met, recovery by one who either does not or cannot visually observe the event, but observes the event by some other sense, such as audibly.

9

> narrowly confined interest in mental and
> emotional stability. When confronted with
> accidental death,     "the reaction to be expected
> of normal persons,"     . . . is shock and fright. . . .
> Since the sense of loss attendant to death or
> serious injury is typically not present following
> lesser accidental harm, perception of less serious
> harm would not ordinarily result in severe
> emotional distress.

Portee v. Jaffee, 417 A.2d 521, 528 (N.J. 1980). Thus, plaintiff seeking recovery for emotional injuries suffered as a result of injury to a third party must establish that the injury to the third party was, or reasonably was perceived to be, serious or fatal.

A third factor which relates to the foreseeability of plaintiff's emotional injury is plaintiff's relationship to the injured third party. Most courts have required that the relationship be "close." In justifying this requirement, courts have deferred to medical judgment which is in "general[] agreement that a mere bystander who has no significant relationship with the victim will not suffer the profound, systematic mental and emotional reaction likely to befall a close relative. . . ." James v. Lieb, 375 N.W.2d 109, 115 (Neb. 1985). Stated differently: "It is the very nature of the relationship between the plaintiff and the victim which makes the emotional reaction experienced by the plaintiff so poignant." Heldreth v. Marrs, 425 S.W.2d 157, 163 (W.Va. 1992).

We reiterate that plaintiff must establish that defendant's negligence factually and legally caused plaintiff to suffer serious or severe emotional injuries. As we made clear in Camper, our ruling does not provide recovery

for "every minor disturbance to a person's mental tranquility." Barnhill v. Davis, 300 N.W.2d 104, 107 (Iowa 1981), but only for serious or severe emotional injuries. A "'serious' or 'severe' emotional injury occurs where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." Camper v. Minor, 915 S.W.2d at 446.

Our holding in Camper and here should not be construed to allow recovery for fright or fear alone. Likewise, hurt feelings, trivial upsets, and temporary discomfort would not be sufficient for recovery. Only those serious or severe emotional injuries which disable a reasonable, normally constituted[3] person from coping adequately with the stress are sufficient to form the basis for recovery. Additionally, the "claimed injury or impairment must be supported by expert medical or scientific proof." Id.

CONCLUSION

Our holding today abandons the hypertechnical approach of the zone of danger rule and recognizes that in certain circumstances a plaintiff whose physical safety is not endangered may nonetheless suffer compensable mental injury as a result of injuries to a closely related third person which plaintiff observes sensorily. As has been recognized:

> To require that the plaintiff must be within the
> zone of physical danger of the defendant's
> negligent conduct and fear for his or her own
> safety in order to recover for the serious emotional
> distress blatantly ignores the very cause of the

---

[3]By reasonable, normally constituted person we mean a person of ordinary sensitivities. See Heldreth v. Marrs, 425 S.E.2d 157, 166 (W.Va. 1992).

plaintiff's emotional distress.

Heldreth v. Marrs, 425 S.E.2d at 169.  Utilizing the general negligence approach for causes of action based on negligent infliction of emotional distress with its traditional focus on foreseeability, and requiring that the injuries for which compensation is sought be serious or severe, will reasonably limit liability while allowing recovery in meritorious cases.

We, therefore, reverse the judgments of the Court of Appeals and trial court dismissing this case.  We remand to the trial court for further proceedings.

_____
Penny J. White, Justice

CONCUR:

Birch, C.J.
Drowota, Anderson, Reid, J.J.

12