IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 1, 2021 Session

## STEPHANIE MUHAMMED ET AL. v. DURHAM SCHOOL SERVICES, L.P., ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 17C1265    John B. Bennett, Judge**

———————————————————

**No. E2020-00755-COA-R10-CV**

———————————————————

This extraordinary appeal arises from a school bus crash in November 2016, which resulted in the tragic death of six children attending Woodmore Elementary School in Chattanooga.[1] Plaintiff, a computer teacher at Woodmore, sued the employer of the bus driver for, *inter alia*, reckless infliction of emotional distress ("RIED"). The teacher alleged that the employer's failure to address the bus driver's dangerous driving despite receiving numerous warnings disregarded the children's safety, constituted reckless and outrageous conduct, and caused her serious mental injuries. The trial court denied the employer's motion to dismiss the claim, finding that the teacher had sufficiently alleged outrageous conduct on the part of the employer and that she had met all other pleading requirements to sustain her RIED claim. Employer appeals. Although we agree with the trial court that the teacher sufficiently alleged conduct so outrageous by the employer that it cannot be tolerated by civilized society, we hold that the teacher is not a person who falls within the reasonably foreseeable scope of the particular substantial and unjustifiable risk consciously disregarded by the employer and, therefore, cannot recover under a reckless infliction of emotional distress claim. Consequently, we reverse the trial court's finding on this latter issue and remand the case for dismissal of the action against employer.

**Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Circuit Court Affirmed in Part and Reversed in Part; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., AND THOMAS R. FRIERSON, II, J., joined.

Melissa A. Murphy-Petros, Chicago, Illinois, and Michael R. Campbell, Chattanooga, Tennessee, for the appellants, Durham School Services, L.P., and National Express, LLC.

---

[1] By order dated September 11, 2020, this Court consolidated this and four other extraordinary appeals arising from the same school bus crash for purposes of oral argument. Separate opinions addressing the other appeals are being filed concurrently with this opinion.

Ronald J. Berke, Chattanooga, Tennessee, for the appellees, Stephanie Muhammed and Sabir Muhammed.

## OPINION

### FACTS AND PROCEDURAL HISTORY

The underlying facts of this case are widely known and are not in dispute. On November 21, 2016, school bus driver Johntony Walker lost control of a school bus with thirty-seven Woodmore students on it, causing the bus to crash and flip over. Six children lost their lives, and many others were injured. At the time of the crash, Walker was employed by Durham School Services, L.P., a subsidiary of National Express, LLC (together, "Durham"), which had a contract with Hamilton County Schools to provide school bus services. The plaintiff here, Stephanie Muhammed, was a computer teacher at Woodmore.[2]

On November 17, 2017, Muhammed filed a lawsuit against Durham in the Hamilton County Circuit Court ("the trial court"), asserting claims for negligent infliction of emotional distress, intentional infliction of emotional distress, and breach of a promise to pay for necessary counseling and treatment related to the bus crash based on Walker's reckless driving of the school bus.[3] Specifically, she averred that she went to the hospital upon learning of the bus crash and that she was asked at the hospital to identify the injured children. In addition, Muhammed alleged that Durham was negligent in hiring, training, supervising, and retaining Walker as a school bus driver. The complaint also includes a claim for loss of consortium asserted by Muhammed's husband, Sabir Muhammed. [4]

Durham moved to dismiss the action under Rule 12.02(6) of the Tennessee Rules of Civil Procedure, arguing that Muhammed failed to state a cause of action for negligent infliction of emotional distress because she had not witnessed the accident and did not have the requisite close and intimate personal relationship with the deceased children. As to the claim for intentional infliction of emotional distress, Durham contended that Muhammed could not prevail because its alleged conduct was not outrageous. Lastly, Durham submitted that it had no legal obligation to pay for counseling and treatment because there was no consideration for its alleged promise to so do. Durham did not address Muhammed's allegations of negligent hiring, training, supervision, and retention.

On March 6, 2018, Muhammed filed an Amended Complaint, which added several

---

[2] The record shows both "Muhammad" and "Muhammed" as the plaintiff's last name. Intending no disrespect, we have opted to use the latter throughout this opinion.

[3] Although Muhammed's complaint also named Walker as a defendant, Walker is not a party to this appeal.

[4] The parties raise no issues on appeal as to this claim.

new paragraphs primarily concerning the nature of Muhammed's relationship with the students involved in the bus crash and Durham's knowledge of and failure to address Walker's history of reckless and dangerous driving. For example, Muhammed alleged that she "spent as much or more time with the students during waking hours than the parents did"; that she and her husband are, in fact, "relatives of one of the deceased students"; and that she "was a surrogate mother to many of the students in the bus, including students who were badly injured and students who died due to the crash." Muhammed also averred that, while at the hospital, she saw one of the students die. As to Walker's driving, the Amended Complaint stated that Woodmore teachers, staff, and parents knew about Walker's reckless driving habits, which "were frequently reported to Durham who did no investigation and who did nothing." Muhammed also alleged that Durham "knew or should have known that a crash involving serious injury and death to the students would have a serious and debilitating effect on the teachers and staff at the school."

Two weeks later, Durham renewed its motion to dismiss, restating its original arguments and also contending that Muhammed did not allege in the Amended Complaint a type of relationship with the students "that falls outside the normal realm of a general staff-student relationship" so as to support her claim for negligent infliction of emotional distress. Moreover, Durham argued, there is no legal or factual basis for concluding that a "good school staff member" automatically becomes a surrogate parent or has a close and intimate personal relationship of the nature contemplated by the courts when granting relief for emotional distress. With respect to the new allegations concerning Walker's frequent and widely known reckless driving, Durham insisted that such conduct is not sufficiently outrageous to support a claim for intentional infliction of emotional distress.

Muhammed filed a brief opposing the motion to dismiss, emphasizing that Durham's "inaction, which they knew could lead to the serious injury and death of a bus load of children, is so outrageous that it cannot be tolerated by civilized society" and that Durham "knew or should have known that a crash involving serious injury and death to the students would have a serious and debilitating effect on the teachers and staff at the school." In reply, Durham contended that Muhammed's negligent infliction of emotional distress claim fails not only because she did not allege the requisite close and intimate personal relationship with the students, but also because she neither witnessed the bus crash nor the scene before it was materially altered, as required by our Supreme Court in *Ramsey v. Beavers*, 931 S.W.2d 527 (Tenn. 1996) and *Eskin v. Bartee*, 262 S.W.3d 727 (Tenn. 2008), respectively.

Over Durham's objection, the trial court granted Muhammed's motion to amend her complaint a second time. This Second Amended Complaint, filed on January 30, 2019, added, *inter alia*, the following relevant allegations concerning Walker's repeated driving misconduct and Durham's failure to take any action despite having knowledge of the same:

- That Durham had "received over one thousand notifications from Zonar[5] that . . . Walker was speeding while driving his school bus."
- That Durham was aware that in August and September of 2016, "Walker was at fault in two accidents within a period of thirty-four days."
- That Durham knew "Walker would slam on his brakes to make the children [on the bus] hit their heads" and "had even seen video where Walker was talking on a telephone with a blue tooth headset while driving the school bus."
- That Durham knew "Walker had fallen asleep at the wheel on two occasions."
- That Durham took no action when "Walker missed five out of five mandatory safety meetings during his short term of employment with Durham."
- That five days before the bus crash, on November 16, 2016, Durham received notice that on that same date, "six students reported that Walker was intentionally swerving the bus to knock the children out of their seats."
- That Durham had information from Zonar that on November 16, 2016, Walker "had twenty five separate speeding incidents . . . [and in] five of the incidents, he was speeding more than twenty miles over the speed limit."
- That Durham was in possession of, but failed to review promptly, a twenty-six-minute video of the November 16, 2016 incident showing "dramatic and intentional attempts by Walker to throw the children off their seats and injure them," prior to the bus crash five days later on November 21, 2016.
- That Durham "had no central place to log complaints which were made by other drivers or complaints made by the public . . . [and] no central place to record violations of their own regulations and did not even have a policy on documenting complaints."
- That Durham "did no investigation of Walker's speeding events . . . [and] not even an investigation of Walker's speeding incident on the dates of his two at-fault accidents."
- That Durham failed to test Walker for alcohol and controlled substance abuse after his two at-fault accidents, as required by federal regulations.
- That Durham did not document in its daily log "complaints by parents that were emailed to [Durham] . . . [nor] put in Walker's file, and were not even forwarded to a training or safety supervisor. There was no investigation and no discipline of Walker."
- That "all of the above cited facts amounted to a reckless indifference to the lives and safety of the children riding on the buses and to others in the community."

Muhammed later filed a supplemental memorandum of law to elaborate on the RIED claim and related allegations raised in her Second Amended Complaint. She emphasized our Supreme Court's holding in *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 38 (Tenn. 2005), that an actionable claim for "reckless infliction of emotional distress need not be based upon conduct that was directed

---

[5] According to the Second Amended Complaint, Zonar "is a company that [Durham] hired to track, among other things, the path of the buses and the speed of the buses[,]" and it sends "email notifications not only to the supervisors and management of [Durham] in Chattanooga, but also to [its] corporate offices."

at a specific person or that occurred in the presence of the plaintiff." The rest of her memorandum restated the bulk of the allegations made in her Second Amended Complaint.

Durham submitted to the trial court a consolidated supplemental brief in further support of its renewed motion to dismiss.[6] Durham asserted that, concerning RIED claims, *Doe* retained a foreseeability requirement by stating that "[t]he reckless tortfeasor will be liable only to persons who fall within the reasonably foreseeable scope of the particular substantial and unjustifiable risk consciously disregarded by the tortfeasor." *Id.* at 39. Moreover, Durham contended, it would seem anomalous that a non-bystander, such as Muhammed, could meet the higher burden to recover for reckless infliction of emotional distress but be denied relief for negligent infliction of emotional distress based on the same facts. Durham added that the facts alleged by Muhammed to show Durham's negligent supervision and retention of Walker, even if true, do not amount to extreme and outrageous conduct.

After a hearing on Durham's renewed motion to dismiss, the trial court filed a written order on July 15, 2019. The trial court found that "the allegations in the [Second] Amended Complaint show a closeness of relationship between the plaintiff and the children, and a very serious driving problem with Mr. Walker." The trial court denied Durham's motion to dismiss Muhammed's RIED claim, concluding that she satisfied the claim's pleading requirements because "(1) the conduct alleged is outrageous as a matter of law, (2) [Durham] had knowledge prior to the accident that any intentional or reckless injury done to the children would have an adverse impact on plaintiff's emotional state; and (3) the plaintiff otherwise meets the requirements of *Doe* . . . , and falls within the reasonably foreseeable scope of persons who could be injured by the particular substantial and unjustifiable risk consciously disregarded by the tortfeasor." Muhammed's claim for negligent infliction of emotional distress was dismissed because she "did not go to the scene of the accident, and therefore does not satisfy the factors required to proceed with this cause of action." Likewise, the trial court dismissed the claim for breach of contract, finding that Muhammed made no allegations with respect to the consideration required to form a contract.

After the trial court denied the parties' motions for interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure, Durham applied to this Court for an extraordinary appeal, *see* Tenn. R. App. P. 10, which we granted.

### ISSUES PRESENTED

Our July 9, 2020 Order granting Durham's application for an extraordinary appeal delineates the following issues on appeal:

---

[6] Durham also filed this same consolidated supplemental brief in four separate civil actions instituted by other Woodmore teachers and staff arising from the same 2016 school bus crash.

1) Whether Plaintiff's complaint survives a motion to dismiss by sufficiently alleging conduct so outrageous that it is not tolerated by civilized society; and

2) Whether Plaintiff's complaint survives a motion to dismiss by sufficiently alleging that Plaintiff is a person who falls within the reasonably foreseeable scope of the particular substantial and unjustifiable risk consciously disregarded by the tortfeasors.

## STANDARD OF REVIEW

In an extraordinary appeal, appellate courts apply the same standard of review that would have been applied to the issues in an appeal as of right. *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712 (Tenn. 2012); *Culbertson v. Culbertson*, 455 S.W.3d 107, 124 (Tenn. Ct. App. 2014). The trial court's denial of Durham's motion to dismiss "is a question of law, which this Court reviews *de novo* with no presumption of correctness." *See Heaton v. Mathes*, No. E2019-00493-COA-R9-CV, 2020 WL 1652571, at *3 (Tenn. Ct. App. Apr. 3, 2020) (citations omitted). Our Supreme Court has set forth the parameters of our review:

> A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.

> In considering a motion to dismiss, courts must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. A trial court should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.

*Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (cleaned up). However, this Court is "not required to accept as true assertions that are merely legal arguments or 'legal conclusions' couched as facts." *Id.* at 427.

## ANALYSIS

The overarching issue before us is whether the trial court correctly denied Durham's motion to dismiss Muhammed's RIED claim.[7] We begin by summarizing the legal

---

[7] To be clear, intentional infliction of emotional distress and RIED are not different causes of action. Rather, as our Supreme Court has explained, "intentional infliction of emotional distress can be proven by a showing of either reckless or intentional behavior." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205

principles governing this cause of action. As stated by our Supreme Court, the required elements of a RIED claim are: (1) the conduct complained of must have been reckless; (2) the conduct must have been so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must have caused serious mental injury to the plaintiff. *Doe*, 154 S.W.3d at 41 (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)); *see also Rogers*, 367 S.W.3d at 205. In *Doe*, the Court also held that the plaintiff need not allege that the reckless conduct of the defendant "was directed at a specific person or that [it] occurred in the presence of the plaintiff." 154 S.W.3d at 38–39. The Court explained that the requirements of the tort itself—a reckless state of mind, outrageous conduct, and serious mental harm to the plaintiff—"perform an important gate-keeping function for the purposes of ensuring the reliability of claims and of preventing liability from extending unreasonably." *Id.* at 39. Further, the Court explained that "[t]he reckless tortfeasor will be liable only to persons who fall within the reasonably foreseeable scope of the particular substantial and unjustifiable risk consciously disregarded by the tortfeasor." *Id.* at 39–40 (citing *Tommy's Elbow Room v. Kavorkian*, 727 P.2d 1038, 1044 (Alaska 1986); *Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976); *McClenahan v. Cooley*, 806 S.W.2d 767, 775–76 (Tenn. 1991)). We now address in turn the two issues presented in this appeal.

## I. Outrageous Conduct

In its order denying Durham's motion to dismiss Muhammed's RIED claim, the trial court stated that the conduct alleged was "outrageous as a matter of law." Our Supreme Court has repeatedly and unwaveringly held that to satisfy the outrageousness element, the defendant's alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)); *see also Doe*, 154 S.W.3d at 39; *Lourcey v. Est. of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004); *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999); *Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn. 1997); *Moorhead v. J. C. Penney Co.*, 555 S.W.2d 713, 717 (Tenn. 1977). Put another way: "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'" Restatement (Second) of Torts § 46 cmt. d. By contrast, conduct consisting of "'"mere insults, indignities, threats, annoyances, petty oppression, or other trivialities"'" is not sufficient to support liability under this tort. *Medlin*, 398 S.W.2d at 274 (citation omitted). Given this high threshold, courts have a duty to determine in the first instance "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.* at 275 (citation omitted).

---

n.6 (Tenn. 2012) (citations omitted). We refer to Muhammed's claim as RIED throughout this opinion because it is undisputed that Durham's allegedly tortious conduct was not intentional. *Accord Doe*, 154 S.W.3d at 41.

We have no difficulty concluding that Durham's alleged conduct, or rather complete lack of action, was outrageous. Walker had only been employed by Durham as a bus driver for four months prior to the accident, but his tenure was littered with examples of unbelievably dangerous conduct about which Durham allegedly did nothing. According to Muhammed, months prior to the November 2016 crash, Durham was aware that Walker was at fault in two motor vehicle accidents in August and September 2016, respectively; that Walker had fallen asleep at the wheel at least twice; that he would slam on the brakes to make the students on the bus hit their heads; and that he had missed every single mandatory safety meeting during his employment with Durham. In addition, Zonar, the company engaged by Durham to monitor its drivers' speeding practices, had notified Durham that Walker had been speeding more than one thousand times while driving the school bus. In fact, Zonar notified Durham that on November 16, 2016, five days prior to the deadly crash, it had registered twenty five separate speeding incidents, with Walker going more than twenty miles per hour over the speed limit in five of them. Muhammed alleges that Durham did nothing with this information. Specifically, Durham did not test Walker for alcohol and controlled substance abuse after his two at-fault accidents, as required by federal regulations; it did not investigate Walker's repeated speeding events, not even those that occurred on the dates of his two at-fault accidents; and it had no system to log and address complaints made about its drivers or violations of its own regulations.

Durham argues its conduct was not outrageous because "[t]he outrageous conduct requirement is a high standard which has consistently been regarded as a significant limitation on recovery," *Doe*, 154 S.W.3d at 39, and because the allegations made by Muhammed "are not dissimilar from those commonly made against transportation service providers whose employees are alleged to have caused fatal accidents" and amount to no more than "'[p]oor management [and] deviations from business practices,'" *see Rhodes v. Bates Rubber, Inc.*, No. 1:19-cv-01030-STA-jay, 2019 WL 2723237, at *5 (W.D. Tenn. June 27, 2019). Such allegations, Durham posits, are not "unusual" enough to state a claim for reckless infliction of emotional distress.

Durham's reliance on *Rhodes* is misplaced. In that case, the plaintiff asserted an intentional infliction of emotional distress claim based on age discrimination by his former employer. *Id.* at *1. The plaintiff alleged that his direct supervisor "demeaned him by using condescending language . . . and by calling him patronizing names during discussions with other plant employees" and that the supervisor "used [a] supposed violation of company policy as a pretext to terminate [the plaintiff's] employment." *Id.* at *4. The federal district court determined that in Tennessee, "malice and bad intent simply do not suffice to show that a person's actions" satisfy the outrageous conduct requirement. *Id.* at *6. As that court noted, "'mere insults, indignities, threats, annoyances, petty oppression or other trivialities' cannot constitute outrageous conduct." *Id.* at *4 (quoting *Bain*, 936 S.W.2d at 622). Respectfully, the allegations made by the plaintiff in *Rhodes* are not remotely within the same universe as those made by Muhammed. While the conduct of the supervisor in *Rhodes* is certainly not appropriate workplace demeanor and may have

unfairly—even discriminatorily—caused the plaintiff to lose his employment, *id.*, that conduct never created or ignored a risk of serious physical harm to individuals placed under the employer's care. We find that the allegations in the present case are not analogous to those in "a run-of-the-mill wrongful termination or disparate treatment case." *Id.* at *5. *Rhodes* is inapposite here.

Durham also submits that "if even criminal intent or malicious intent is insufficient to sustain an intentional or reckless infliction of emotional distress claim, the common allegations of mismanagement and recklessness made here against Durham will not do." Muhammed's allegations are not common allegations of mismanagement. They are allegations of severe and extreme reckless disregard for unbelievably dangerous behavior. Durham seemingly conflates the first element of a RIED claim (i.e., the tortfeasor's state of mind while engaging in the conduct at issue) with the second (i.e., the conduct's outrageous character and extreme degree). This argument is unavailing.

Durham also calls our attention to two emotional distress cases based on intentional acts of the defendant as examples of the type of "exceptional" conduct that may qualify as outrageous and to show why its own conduct does not rise to that level. *See Lourcey*, 146 S.W.3d at 52 (where defendant estate's decedent instructed plaintiff to call 911 because wife was having a seizure and then proceeded to shoot both wife and himself in the head in the presence of plaintiff); *Levy v. Franks*, 159 S.W.3d 66, 84 (Tenn. Ct. App. 2004) (where defendant made death threats and fired shots near plaintiff's home). Again, Durham's argument is misplaced. First, both cases involved intentional conduct directed at the plaintiffs; here, we are dealing with Durham's recklessness. In *Lourcey*, the decedent's intentional conduct posed a substantial risk of emotional harm to plaintiff; here, Durham's reckless conduct ignored a substantial risk of both emotional and physical harm. Contrary to Durham's argument, its alleged conduct is on par with that of the tortfeasors in *Lourcey* and *Levy*.

Durham points out that the element of outrageous conduct "is an exacting standard" meant to filter out "fraudulent and trivial claims." *Miller*, 8 S.W.3d at 614. We agree. There is no indication in this record that Muhammed's claims are fraudulent—and they are certainly not trivial. The allegations here are not simply of poor management or deviation from business practices commonly alleged by plaintiffs against transportation service providers. We hold that a jury could reasonably conclude that Durham's conduct, "considered as a whole, was extreme, outrageous and intolerable in present day society." *Moorhead*, 555 S.W.2d at 717.

The factual allegations in Muhammed's pleadings are sufficient to satisfy the outrageous conduct element of a RIED claim. Muhammed alleges that Durham was aware of, but chose to ignore, a plethora of incidents indicating that the on-the-job conduct of one of its employees, Walker, presented an imminent risk of serious harm to the students. Inexplicably, Durham allowed Walker to continue driving a school bus full of elementary

school children, despite having received multiple warnings of Walker's dangerous behavior. Six children were killed and scores of others were injured. The trial court correctly concluded that plaintiff sufficiently alleged the element of outrageous conduct.

## II. Reasonably Foreseeable Scope of the Risk

With respect to the second issue for review, the trial court found that Muhammed's "allegations in the [Second] Amended Complaint show a closeness of relationship between the plaintiff and the children." The trial court's order also stated that Durham "had knowledge prior to the accident that any intentional or reckless injury done to the children would have an adverse impact on plaintiff's emotional state," that Muhammed "otherwise meets the requirements of *Doe*," and that she "falls within the reasonably foreseeable scope of persons who could be injured by the particular substantial and unjustifiable risk[] consciously disregarded by the tortfeasor."

A brief review of the facts in *Doe* is instructive. The plaintiffs in that case had been sexually molested as minor boys by a priest formerly employed by the Roman Catholic Diocese of Nashville. *Id.* at 24–30. They sued the Diocese for reckless infliction of emotional distress, alleging that—despite being fully aware that the former priest had a long history of sexually molesting numerous boys—the Diocese recklessly permitted the priest to have continued access to male minors, including plaintiffs, through Diocese-related activities and events for more than two decades. *Id.* This Court affirmed the trial court's grant of summary judgment in favor of the Diocese, concluding that a reckless infliction of emotional distress claim must be based on conduct that was directed at the plaintiff. *Id.* at 31. Our Supreme Court, however, reversed and held that "to be actionable, reckless infliction of emotional distress need not be based upon conduct that was directed at a specific person or that occurred in the presence of the plaintiff." *Id.* at 24. The Court reasoned that "the directed-at requirement is incompatible with the concept of recklessness insofar as reckless misconduct has a general or random quality." *Id.* at 39 (citations omitted). Having set aside the directed-at requirement, the Court explained that "[t]he elements of intentional and reckless infliction of emotional distress themselves perform an important gatekeeping function for the purposes of ensuring the reliability of claims and of preventing liability from extending unreasonably." *Id.* In this context, the Court specifically stated that a "reckless tortfeasor will be liable *only* to persons who fall within the reasonably foreseeable scope of the particular substantial and unjustifiable risk consciously disregarded by the tortfeasor." *Id.* at 39–40 (citations omitted) (emphasis added).

Here, Durham acknowledges that under *Doe*, "a claim of reckless infliction of emotional distress need not be based upon conduct that was directed at a specific person or that occurred in the presence of the plaintiff." 154 S.W.3d at 38–39. Durham argues, however, that the plaintiff does not fall within the reasonably foreseeable scope of the risk consciously disregarded by the tortfeasor. Durham argues that the following factors are

probative on this issue: whether the plaintiff witnessed the injury-producing accident; whether the plaintiff went to the scene of the accident before it was materially altered; and whether the plaintiff had a close and intimate personal relationship with the accident's victims. Durham submits that neither the trial court nor Muhammed has explained how a computer teacher who never visited the scene of the bus crash falls within the reasonably foreseeable scope. We agree with Durham.

Although Tennessee appellate courts had not specifically articulated the "reasonably foreseeable scope" constraint on recovery until *Doe*, this limitation is consistent with our Supreme Court's recognition that the requirements of a RIED claim must "perform an important gate-keeping function for the purposes of ensuring the reliability of claims and of preventing liability from extending unreasonably." *Id.* at 39. Our task here then, as recognized in the order granting this Rule 10 extraordinary appeal, is to determine whether Muhammed sufficiently alleged that she is a person who falls within the reasonably foreseeable scope of the particular substantial and unjustifiable risk consciously disregarded by Durham.[8] In other words, did Muhammed sufficiently allege that she was among the class of persons for whom there was a high degree of probability that severe emotional distress would follow after the bus crash? *See id.* at 39–40 (citing *Tommy's Elbow Room v. Kavorkian*, 727 P.2d 1038, 1044 (Alaska 1986); *Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976)).

We acknowledge that neither our Supreme Court nor this Court has outlined the parameters of the inquiry to determine whether a person falls within the reasonably foreseeable scope of plaintiffs in a RIED claim. Appellate court opinions subsequent to *Doe* did not need to address whether the plaintiffs had met the "reasonably foreseeable scope" requirement because, generally, the plaintiff was either a person immediately subject to the defendant's outrageous conduct or a family member of that person. *See, e.g.*, *Rogers*, 367 S.W.3d at 211 (after cemetery became overgrown and ill-maintained, mother sued cemetery where son had been buried); *Lourcey*, 146 S.W.3d at 49–50 (defendant purposely shot his wife and then himself in the plaintiff's presence); *Harris v. Horton*, 341 S.W.3d 264, 266 (Tenn. Ct. App. 2009) (mother and sister of man who died in a motor vehicle accident sued paramedic who circulated photos of the accident scene and decedent's corpse at a driver's education class). The circumstances in those cases leave little doubt that the plaintiffs were persons who fell within the reasonably foreseeable scope of the particular substantial and unjustifiable risk consciously disregarded by the defendants.

Our Supreme Court's jurisprudence concerning the role of foreseeability in the related claim of negligent infliction of emotional distress ("NIED") is instructive. In

---

[8] Although the Court specifically identified the issue of whether plaintiff falls within the reasonably foreseeable scope in the order granting Durham's Rule 10 application for extraordinary appeal, Muhammed did not argue this issue in her brief.

*Ramsey*, a son sued for NIED after he witnessed a vehicle strike and kill his mother when she got out of the car to check the mail at the son's driveway while he remained seated inside the car. 931 S.W.2d at 528. The son remained in the car as the accident occurred. *Id.* The Court of Appeals affirmed the trial court's grant of summary judgment in favor of the defendant on the basis of plaintiff's failure to demonstrate that "his claim relate[d] to fear for his own safety and not for that of his mother." *Id.* at 529. The Supreme Court reversed and allowed the claim to proceed, holding that to recover for emotional injuries sustained as a result of death or injury of a third person, as Muhammed seeks to do here, a plaintiff must show that the emotional injuries were a foreseeable result of the defendant's negligence. *Id.* at 531. This inquiry "requires consideration of a number of relevant factors," including the plaintiff's awareness of the event or accident and plaintiff's physical location at the time of the event or accident, the degree of injury to the third person, and the plaintiff's relationship to the injured third party. *Id.* at 531–32; *see also Lourcey*, 146 S.W.3d at 52–53 (applying these foreseeability factors). Importantly, the *Lourcey* Court underscored: "Although we discussed several considerations in analyzing foreseeability in *Ramsey*, including the plaintiff's relationship to the injured party, we did not hold that the plaintiff's relationship to the injured party was itself an element for stating or establishing a claim for negligent infliction of emotional distress." *Lourcey*, 146 S.W.3d at 53 (citing *Ramsey*, 931 S.W.2d at 531).

Subsequently, in *Eskin v. Bartee*, 262 S.W.3d 727, 738 (Tenn. 2008), the Court allowed "a mother who observed her young child lying unconscious in a pool of blood in his school's driveway minutes after he had been struck by an automobile" to pursue a NIED claim. The Court held that recovery was permissible for "plaintiffs who have a close personal relationship with an injured party *and . . .* arrive at the scene of the accident while the scene is in essentially the same condition it was in immediately after the accident." *Id.* (emphasis added). The Court explained that its holding was partly grounded on the Court's historical recognition "that it is easily foreseeable that persons who have a close personal relationship with an injured party will suffer serious or severe emotional distress when they see someone 'near and dear' to them injured." *Id.* (citing *Ramsey*, 931 S.W.2d at 529; *Shelton v. Russell Pipe & Foundry Co.*, 570 S.W.2d 861, 866 (Tenn. 1978)). The Court also noted that "[w]hile a parent-child relationship, a spousal relationship, a sibling relationship, or the relationship among immediate family members provides sufficient basis for a claim, other intimate relationships *such as* engaged parties or step-parents and step-children will also suffice." *Id.* at 740 (emphasis added). Under the combined precedent of *Ramsey*, *Lourcey*, and *Eskin*, although a plaintiff's relationship to the injured third party is not an element of a NIED claim, it remains a relevant factor in determining the foreseeability of emotional injuries to the plaintiff. In addition, while *Eskin* made clear that close personal relationships bearing on foreseeability are not limited to relationships shared by immediate family members, the "other intimate relationships" referenced in the opinion (i.e., "relationships such as engaged parties or step-parents and step-children") contemplate circumstances where plaintiffs had become or clearly intended to enter into a familial type of relationship with the injured third party by the time the injury occurred.

We discern no logical basis for applying a different approach to determine whether a plaintiff falls within the reasonably foreseeable scope in a RIED claim.

Our careful consideration of the facts alleged in the pleadings, in light of the foreseeability principles discussed above and giving Muhammed the benefit of all reasonable inferences, leads us to conclude that she does not fall within the class of persons for whom there was a high degree of probability that severe emotional distress would follow after the bus crash. To begin with, Muhammed was not the immediate subject of Durham's reckless and outrageous conduct. Durham's decision to disregard the multiple and repeated warnings it received concerning Walker's dangerous driving subjected the children on Walker's bus, not Muhammed, to a substantial and unjustifiable risk of serious physical and emotional harm. Next, Muhammed was neither aware of the fatal accident nor in physical proximity to the accident at the time it occurred. Indeed, she never was at the scene of the accident. Muhammed learned about the crash before visiting the hospital where she saw one of her students die. But going to the hospital *after* having notice of what had occurred and identifying injured or deceased children there do not bring Muhammed within the reasonably foreseeable class of persons who were placed at a substantial and unjustifiable risk of emotional distress. With respect to the foreseeability analysis, our Supreme Court has noted that "[o]bviously, it is more foreseeable that one witnessing or having a sensory observation of the event will suffer effects from it," explaining:

> The impact of personally observing the injury-producing event in most, although concededly not all, cases distinguishes the plaintiff's resultant emotional distress from the emotion felt when one learns of the injury or death of a loved one from another, or observes pain and suffering but not the traumatic cause of the injury.

*Ramsey*, 931 S.W.2d at 531 (quoting *Thing v. La Chusa*, 771 P.2d 814, 828 (Cal. 1989)); *see also Eskin*, 262 S.W.3d at 738 (holding that "plaintiffs who have a close personal relationship with an injured party and who arrive at the scene of the accident while the scene is in essentially the same condition it was in immediately after the accident" may recover for emotional distress); *Lourcey*, 146 S.W.3d at 55 (holding that the plaintiff could survive a Rule 12.02(6) motion to dismiss because she witnessed the defendant shooting his wife and himself, even though the plaintiff was not related to the defendant or his wife).

Importantly, Muhammed did not share a familial type of relationship with any of the injured and deceased children.[9] *See Ramsey*, 931 S.W.2d at 528; *Eskin*, 262 S.W.3d at

---

[9] Muhammed's bare allegation that she and her husband are "relatives of one of the deceased students," by itself, is not tantamount to an allegation that she had a close personal relationship with the deceased student, *see Eskin*, 262 S.W.3d at 738, and is therefore insufficient to make Muhammed a reasonably foreseeable plaintiff in this case. Further, Muhammed did not identify the deceased student or the nature of the relation between them.

- 13 -

738. While it would be foreseeable that Woodmore classmates, staff members, and teachers, like Muhammed, as well as neighbors, acquaintances, and persons in multiple other categories would be impacted by the tragic losses from the bus crash, Muhammed is not a person who falls within the reasonably foreseeable scope of the risk disregarded by Durham. Her relationship with the children is simply too attenuated. Muhammed alleges that she spent "as much or more time with the students during waking hours than the parents did," but the same allegation could be made by anyone who attended or worked at Woodmore. Indeed, almost every elementary school teacher and student could make the same allegation concerning students in their classrooms. Employees in an office with typical business hours could allege the same with respect to their co-workers. Further, Muhammed's conclusory allegation that she became "a surrogate mother to many of the students in the bus, including students who were badly injured and students who died due to the crash," was not made as to any child in particular. Deeming Muhammed a foreseeable RIED plaintiff under these circumstances would expand the universe of potential plaintiffs in such cases far beyond the appropriate scope of the tort. In limiting recovery for RIED to persons falling within the reasonably foreseeable scope of the risk disregarded by the tortfeasor, our Supreme Court implicitly held that there are boundaries to the class of persons who might recover under that cause of action. Muhammed falls outside those boundaries. We hold that she is not, as a matter of law, a reasonably foreseeable plaintiff under the facts of this case.

In reaching this holding, we are aware of the Supreme Court's pronouncement that "reckless infliction of emotional distress need not be based upon conduct that was directed at a specific person or that occurred in the presence of the plaintiff." *Doe*, 154 S.W.3d at 38–39. Our holding is not predicated on the fact that Durham's outrageous disregard for the safety of the children was not directed at Muhammed or that such disregard did not occur in her presence. Rather, our holding is based upon our determination that Muhammed is not a reasonably foreseeable plaintiff in this case. We reverse the trial court's judgment as to the second issue in this appeal.

### CONCLUSION

We affirm the judgment of the Hamilton County Circuit Court concluding that Muhammed sufficiently alleged outrageous conduct on the part of Durham but reverse its judgment that Muhammed sufficiently alleged she falls within the reasonably foreseeable scope of the particular substantial and unjustifiable risk consciously disregarded by Durham. We remand for entry of an order granting Durham's motion to dismiss for failure to state a claim upon which relief can be granted. Costs of this appeal are taxed equally between the appellants and the appellees, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE