IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 1, 2021 Session

## BRENDA COTHRAN ET AL. v. DURHAM SCHOOL SERVICES, L.P., ET AL.

**Appeal from the Circuit Court for Hamilton County**
No. 17C1286    John B. Bennett, Judge

———————————————————————

### No. E2020-00796-COA-R10-CV
———————————————————————

This extraordinary appeal arises from a school bus crash in November 2016, which resulted in the tragic death of six children attending Woodmore Elementary School in Chattanooga.[1] Plaintiff, the school principal at Woodmore, sued the employer of the bus driver for, *inter alia*, negligent infliction of emotional distress ("NIED") and reckless infliction of emotional distress ("RIED"). With respect to her NIED claim, the principal alleged that by breaching its duty to keep the students safe, the employer foreseeably caused her severe emotional distress. As to her RIED claim, she averred that the employer's failure to address the bus driver's dangerous driving, despite receiving numerous warnings, disregarded the children's safety, constituted reckless and outrageous conduct, and caused her serious mental injuries. The trial court denied the employer's motion to dismiss as to both claims, finding that the principal's allegations satisfied the pleading requirements to sustain the claims. Employer appeals. We conclude that the principal did not allege the type of relationship to the injured or deceased party required for a plaintiff who did not witness the injury-producing event to recover under a NIED claim. The principal's allegations also failed to show conduct so outrageous by the employer that it cannot be tolerated by civilized society. Consequently, we reverse the trial court's judgment as to both issues and remand the case for dismissal of the action against the employer.

**Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Circuit Court
Reversed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., AND THOMAS R. FRIERSON, II, J., joined.

Melissa A. Murphy-Petros, Chicago, Illinois, and Michael R. Campbell, Chattanooga, Tennessee, for the appellants, Durham School Services, L.P., and National Express, LLC.

---

[1] By order dated September 11, 2020, this Court consolidated this and four other extraordinary appeals arising from the same school bus crash for purposes of oral argument. Separate opinions addressing the other appeals are being filed concurrently with this opinion.

Arthur C. Grisham, Jr., Chattanooga, Tennessee, for the appellees, Brenda Cothran and Harold Delano Cothran, Jr.

## OPINION

### FACTS AND PROCEDURAL HISTORY

The underlying facts of this case are widely known and are not in dispute. On November 21, 2016, school bus driver Johntony Walker lost control of a school bus with thirty-seven Woodmore students on it, causing the bus to crash and flip over. Six children lost their lives, and many others were injured. At the time of the crash, Walker was employed by Durham School Services, L.P., a subsidiary of National Express, LLC (together, "Durham"), which had a contract with Hamilton County Schools to provide school bus services. The plaintiff here, Brenda Cothran, was the school principal at Woodmore.

On November 21, 2017, Cothran filed a lawsuit against Durham in the Hamilton County Circuit Court ("the trial court"), asserting claims for negligent infliction of emotional distress, reckless infliction of emotional distress, and breach of a promise to pay for necessary counseling and treatment related to the bus crash based on Walker's reckless driving of the school bus.[2] Specifically, she alleged that—within minutes of the bus crash—she was notified of the accident and rushed to the scene, where she saw the bus flipped over and children lying on the grass or wandering around the bus, some of whom were injured. She then went to the hospital to help identify injured and deceased children and to comfort the children's families and Woodmore staff. Additionally, Cothran asserts that Durham was negligent in hiring, training, supervising, and retaining Walker as a school bus driver. The complaint also includes a loss of consortium claim asserted by Cothran's husband, Harold D. Cothran, Jr.[3]

Durham moved to dismiss the action under Rule 12.02(6) of the Tennessee Rules of Civil Procedure, arguing that Cothran failed to state a cause of action for negligent infliction of emotional distress because she had not witnessed the accident and did not have the requisite close and intimate personal relationship with the deceased children. Although she went to the scene shortly after the bus crash had occurred, Durham urged the trial court to distinguish between a bystander who observed an accident occur and non-bystander who, like Cothran, "after learning of the accident through an indirect means, voluntarily involves herself in the situation." As to the claim for reckless infliction of emotional distress, Durham contended that Cothran could not prevail because its alleged conduct was

---

[2] Although Cothran's complaint also named Walker as a defendant, Walker is not a party to this appeal.

[3] The parties raise no issues on appeal as to this claim.

not outrageous. Lastly, Durham submitted that it had no legal obligation to pay for counseling and treatment because there was no consideration for its alleged promise to so do. Durham did not address Cothran's allegations of its negligent hiring, training, supervision, and retention of Walker.[4]

On May 22, 2018, Cothran filed an Amended Complaint, which added several new paragraphs primarily concerning the nature of her relationship with the students involved in the bus crash and Durham's knowledge of and failure to address Walker's dangerous driving. For example, Cothran alleged that she "would often spend more time with and in the presence of the children than did their own parents" and that she "was, in many ways, in *loco parentis* with the injured and deceased children on a daily basis." As to Walker's driving, the Amended Complaint stated that after being notified of Walker's reckless behavior by the Hamilton County School system, Durham "failed to take action to correct Walker's reckless and dangerous behavior or to discharge him from his duties as a school bus driver." Cothran also alleged that Durham "kn[ew] or should have known that if there was a school bus accident, there was a high probability that not only children and their parents would be adversely affected, but also teachers and staff of their schools would be adversely affected as well."

On June 28, 2018, Durham renewed its motion to dismiss, restating its original arguments and also contending that Cothran did not allege in the Amended Complaint a type of relationship with the students "that falls outside the normal realm of a general staff-student relationship" so as to support her claim for negligent infliction of emotional distress. Moreover, Durham argued, there is no legal or factual basis for concluding that a "good school staff member" automatically holds *in loco parentis* status or has a close and intimate personal relationship of the nature contemplated by the courts when granting relief for emotional distress. With respect to the new allegations concerning Walker's frequent and widely known reckless driving, Durham insisted that such conduct is not sufficiently outrageous to support a claim for reckless infliction of emotional distress.

Cothran filed a brief opposing the motion to dismiss, asserting that her case presents all the elements required to proceed on a NIED claim in Tennessee because she had a relationship with the students that were injured and killed and saw their serious and fatal injuries at the crash scene within minutes after it occurred. As to the RIED claim, Cothran emphasized that Durham's "inaction, which they knew could lead to the serious injury and death of a bus load of children, is so outrageous that it cannot be tolerated by civilized society" and that Durham "knew or should have known that a crash involving serious injury and death to the students would have a serious and debilitating effect on the teachers and

---

[4] It appears from the record that the parties and the trial court did not treat these allegations as an independent cause of action. *See Heflin v. Iberiabank Corp.*, 571 S.W.3d 727, 737 (Tenn. Ct. App. 2018) ("A plaintiff in Tennessee may recover for negligent hiring, supervision, or retention of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job."). In any event, this is not an issue on appeal.

staff at the school." In reply, Durham contended that Cothran's negligent infliction of emotional distress claim fails not only because she voluntarily went to the scene of the bus crash with full knowledge that the event had occurred, but also because she failed to allege the requisite close and intimate personal relationship with the students, as required by *Eskin v. Bartee*, 262 S.W.3d 727 (Tenn. 2008), for non-bystander NIED claims.

Durham later submitted to the trial court a consolidated supplemental brief in further support of its renewed motion to dismiss.[5] Durham asserted that, in the context of a NIED claim, the *Eskin* Court limited the realm of potential non-bystander NIED claimants to family members or those with pseudo-familial relationships, such as step-parents and step-children. Durham also contended that because Cothran voluntarily decided to rush to the scene after becoming aware of the seriousness of the bus crash, she is different from a plaintiff who is impacted by personally observing the injury producing event, *see Ramsey v. Beavers*, 931 S.W.2d 527, 531 (Tenn. 1996), and cannot recover. With respect to the RIED claim, Durham argued that under our Supreme Court's jurisprudence, the claim has a foreseeability requirement that Cothran does not satisfy. *See Doe 1 ex rel. Doe 1 v. Roman Cath. Diocese of Nashville*, 154 S.W.3d 22, 39 (Tenn. 2005) (emphasis added) ("The reckless tortfeasor will be *liable only to persons who fall within the reasonably foreseeable scope* of the particular substantial and unjustifiable risk consciously disregarded by the tortfeasor."). Durham added that the facts alleged by Cothran to show Durham's negligent supervision and retention of Walker, even if true, do not amount to extreme and outrageous conduct.

After a hearing on Durham's renewed motion to dismiss, the trial court filed a written order on September 17, 2019. The trial court denied the motion as to the NIED claim, finding that "the allegations in the Amended Complaint show that plaintiff satisfies the 'closeness of relationship' and 'proximity' requirements of a negligent infliction of emotional distress claim." The trial court also denied Durham's motion to dismiss Cothran's RIED claim, concluding that she satisfied the claim's pleading requirements because "(1) the conduct alleged is outrageous as a matter of law, (2) [Durham] had knowledge prior to the accident that any intentional or reckless injury done to the children would have an adverse impact on plaintiff's emotional state; and (3) the plaintiff otherwise meets the requirements of *Doe* . . . , and falls within the reasonably foreseeable scope of persons who could be injured by the particular substantial and unjustifiable risk consciously disregarded by the tortfeasor." The trial court dismissed the claim for breach of contract, finding that Cothran made no allegations with respect to the consideration required to form a contract.

After the trial court denied Durham's motion for interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure, Durham applied to this Court for an

---

[5] Durham also filed this same consolidated supplemental brief in four separate civil actions instituted by other Woodmore teachers and staff arising from the same 2016 school bus crash.

extraordinary appeal, *see* Tenn. R. App. P. 10, which we granted.

## ISSUES PRESENTED

Our November 17, 2020 Order granting Durham's application for an extraordinary appeal delineates the following issues on appeal:

1) Whether Plaintiff's complaint survives a motion to dismiss by sufficiently alleging a *prima facie* claim for negligent infliction of emotional distress;

2) Whether Plaintiff's complaint survives a motion to dismiss on the reckless infliction of emotional distress claims by sufficiently alleging conduct so outrageous that it is not tolerated by civilized society; and

3) Whether Plaintiff's complaint survives a motion to dismiss on the reckless infliction of emotional distress claim by sufficiently alleging that Plaintiff is a person who falls within the reasonably foreseeable scope of the particular substantial and unjustifiable risk consciously disregarded by the tortfeasors.

## STANDARD OF REVIEW

In an extraordinary appeal, appellate courts apply the same standard of review that would have been applied to the issues in an appeal as of right. *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712 (Tenn. 2012); *Culbertson v. Culbertson*, 455 S.W.3d 107, 124 (Tenn. Ct. App. 2014). The trial court's denial of Durham's motion to dismiss "is a question of law, which this Court reviews *de novo* with no presumption of correctness." *See Heaton v. Mathes*, No. E2019-00493-COA-R9-CV, 2020 WL 1652571, at *3 (Tenn. Ct. App. Apr. 3, 2020) (citations omitted). Our Supreme Court has set forth the parameters of our review:

A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.

In considering a motion to dismiss, courts must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. A trial court should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.

*Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)

(cleaned up). However, this Court is "not required to accept as true assertions that are merely legal arguments or 'legal conclusions' couched as facts." *Id.* at 427.

ANALYSIS

## I. Negligent Infliction of Emotional Distress

We first consider whether the trial court correctly denied Durham's motion to dismiss Cothran's NIED claim. Generally, to state a prima facie claim for NIED, a plaintiff must allege "'the elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation in fact, and proximate causation[;] . . . [and] that the defendant's negligence caused the plaintiff 'serious or severe emotional injury.''" *Pagliara v. Moses*, 605 S.W.3d 619, 629 (Tenn. Ct. App. 2020), *appeal denied* (June 4, 2020) (quoting *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn. 2012)). Our Supreme Court, however, has more specifically defined the elements of this tort when plaintiffs did not witness the actual event giving rise to their NIED claims:

> When a plaintiff did not witness the injury-producing event, the cause of action for negligent infliction of emotional distress requires proof of the following elements: (1) the actual or apparent death or serious physical injury of another caused by the defendant's negligence, (2) the existence of a close and intimate personal relationship between the plaintiff and the deceased or injured person, (3) the plaintiff's observation of the actual or apparent death or serious physical injury at the scene of the accident before the scene has been materially altered, and (4) the resulting serious or severe emotional injury to the plaintiff caused by the observation of the death or injury. In reaching this conclusion, we do not intend to overrule our holdings in *Camper v. Minor* or *Lourcey v. Estate of Scarlett* that plaintiffs who witness the injury-producing event may recover without demonstrating the existence of a close and intimate personal relationship with the deceased or injured person.

*Eskin*, 262 S.W.3d at 739-40; *see also Garrison v. Bickford*, No. E2010-02008-COA-R9-CV, 2011 WL 3241869, at *6 (Tenn. Ct. App. July 29, 2011). In *Eskin*, the Court allowed "a mother who observed her young child lying unconscious in a pool of blood in his school's driveway minutes after he had been struck by an automobile" to pursue a NIED claim. The Court held that recovery was permissible for "plaintiffs who have a close personal relationship with an injured party *and* . . . arrive at the scene of the accident while the scene is in essentially the same condition it was in immediately after the accident." *Id.* at 738 (emphasis added). The Court explained that its holding was partly grounded on the Court's historical recognition "that it is easily foreseeable that persons who have a close personal relationship with an injured party will suffer serious or severe emotional distress when they see someone 'near and dear' to them injured." *Id.* (citing *Ramsey*, 931 S.W.2d

- 6 -

at 529; *Shelton v. Russell Pipe & Foundry Co.*, 570 S.W.2d 861, 866 (Tenn. 1978)). The Court also noted that "[w]hile a parent-child relationship, a spousal relationship, a sibling relationship, or the relationship among immediate family members provides sufficient basis for a claim, other intimate relationships *such as* engaged parties or step-parents and step-children will also suffice." *Id.* at 740 (emphasis added). The close and intimate personal relationships required for a NIED claim to be viable are not limited to relationships shared by immediate family members; however, the "other intimate relationships" referenced in the opinion (i.e., "relationships such as engaged parties or step-parents and step-children") contemplate circumstances where plaintiffs had become or clearly intended to enter into a familial type of relationship with the injured third party by the time the injury occurred. Importantly, the Court expressly differentiated cases where plaintiffs "witness the injury producing event" from those who do not but arrive "before the scene has been materially altered." *Id.* at 739-40. The former need not demonstrate the existence of a close and intimate personal relationship with the injured or deceased individuals; the latter, however, must establish the existence of such a relationship.

At issue here are the second and third requirements set forth in *Eskin*. The trial court concluded that Cothran satisfied the claim's "closeness of relationship" and "proximity" requirements because she alleged that she was "*in loco parentis* with the injured and deceased children" and that she "went to the scene of the accident." Durham asserts that the trial court erred for two reasons. Durham first argues that Cothran did not allege the type of close and intimate personal relationship with the children that would allow recovery. Durham then insists that this Court should hold that a plaintiff who voluntarily goes to an accident scene after having notice of the accident may not recover for emotional distress. To be sure, Cothran alleges the type of NIED claim governed by *Eskin*. Unlike the plaintiffs in many of the cases cited in her appellate brief, Cothran did not witness the bus crash, was not involved in it, and was not anywhere nearby at the time it occurred. *See, e.g.*, *Lourcey v. Est. of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004) (estate's decedent instructed plaintiff to call 911 because wife was having a seizure and then shot himself and his wife in the plaintiff's presence); *Ramsey*, 931 S.W.2d at 528 (plaintiff, while seated in a car, witnessed his mother being struck by defendant's vehicle when the mother got out of the car to check the mail); *Camper v. Minor*, 915 S.W.2d 437, 439 (Tenn. 1996) (plaintiff was driving the truck that collided with the victim's vehicle after the victim suddenly pulled out in front of the truck, and plaintiff viewed the victim's dead body "moments after the crash . . . in the wreckage from close range"). To the contrary, as the mother in *Eskin*, Cothran arrived at the scene after the injury-producing event had occurred.

Our careful consideration of the applicable legal principles leads us to conclude that Cothran did not allege, as a matter of law, a close and intimate personal relationship with the injured and deceased students that would allow recovery under a NIED claim. *Eskin* allows recovery by plaintiffs who do not witness the injury-producing event giving rise to a NIED claim, in part, because "it is easily foreseeable that persons who have a close personal relationship with an injured party will suffer serious or severe emotional distress

- 7 -

when they see someone 'near and dear' to them injured." 262 S.W.3d at 738. While it was foreseeable that Woodmore classmates, teachers, and staff members, like Cothran, as well as neighbors, acquaintances, and persons in multiple other categories would be impacted by the tragic losses from the bus crash, Cothran does not allege facts that would make her relationship with the students the type of close and intimate personal relationship required for recovery. Her relationship with the children is simply too attenuated. Cothran alleges that she "would often spend more time with and in the presence of the children than did their own parents," but the same allegation could be made by anyone who attended or worked at Woodmore. Indeed, almost every elementary school teacher and student could make the same allegation concerning students in their classrooms. Employees in an office with typical business hours could allege the same with respect to their co-workers. Further, Cothran's conclusory allegation that she "was, in many ways, in *loco parentis* with the injured and deceased children," was not made as to any child in particular. Cothran's proposed application of a NIED claim governed by *Eskin*, under the instant circumstances, would expand the universe of potential plaintiffs in such cases far beyond the appropriate scope of the tort.

Because Cothran failed to state a *prima facie* NIED claim, we need not reach Durham's second contention concerning plaintiffs who voluntarily go to an accident scene after having notice of the accident. The trial court erred in denying Durham's motion to dismiss Cothran's NIED claim.

## II. Reckless Infliction of Emotional Distress

The second and third issue before us concern whether the trial court correctly denied Durham's motion to dismiss Cothran's RIED claim.[6] We begin by summarizing the legal principles governing this cause of action. As stated by our Supreme Court, the required elements of a RIED claim are: (1) the conduct complained of must have been reckless; (2) the conduct must have been so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must have caused serious mental injury to the plaintiff. *Doe*, 154 S.W.3d at 41 (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)); *see also Rogers*, 367 S.W.3d at 205. In *Doe*, the Court also held that the plaintiff need not allege that the reckless conduct of the defendant "was directed at a specific person or that [it] occurred in the presence of the plaintiff." 154 S.W.3d at 38–39. The Court explained that the requirements of the tort itself—a reckless state of mind, outrageous conduct, and serious mental harm to the plaintiff—"perform an important gate-keeping function for the purposes of ensuring the reliability of claims and of preventing liability from extending unreasonably." *Id.* at 39. Further, the Court explained that "[t]he reckless tortfeasor will

---

[6] Our Supreme Court has explained, "intentional infliction of emotional distress can be proven by a showing of either reckless or intentional behavior." *Rogers*, 367 S.W.3d at 205 n.6 (citations omitted). We refer to Cothran's claim as RIED throughout this opinion because it is undisputed that Durham's allegedly tortious conduct was not intentional. *Accord Doe*, 154 S.W.3d at 41.

be liable only to persons who fall within the reasonably foreseeable scope of the particular substantial and unjustifiable risk consciously disregarded by the tortfeasor." *Id.* at 39–40 (citing *Tommy's Elbow Room v. Kavorkian*, 727 P.2d 1038, 1044 (Alaska 1986); *Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976); *McClenahan v. Cooley*, 806 S.W.2d 767, 775–76 (Tenn. 1991)).  We now address each issue in turn.

## A.  Outrageous Conduct

In its order denying Durham's motion to dismiss Cothran's RIED claim, the trial court stated that Durham's alleged conduct was "outrageous as a matter of law."  Our Supreme Court has repeatedly and unwaveringly held that to satisfy the outrageousness element, the defendant's alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)); *see also Doe*, 154 S.W.3d at 39; *Lourcey*, 146 S.W.3d at 51; *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999); *Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn. 1997); *Moorhead v. J. C. Penney Co.*, 555 S.W.2d 713, 717 (Tenn. 1977).  Put another way: "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'" Restatement (Second) of Torts § 46 cmt. d.  By contrast, conduct consisting of "'mere insults, indignities, threats, annoyances, petty oppression, or other trivialities'" is not sufficient to support liability under this tort. *Medlin*, 398 S.W.2d at  274 (citation omitted). Given this high threshold, courts have a duty to determine in the first instance "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.* at 275 (citation omitted).

In her Amended Complaint, Cothran alleged that Durham's failure to discharge its "duties and obligations in a careful manner," so as to keep the students safe, constitutes outrageous conduct.  Cothran further alleged that Hamilton County Schools reported her complaints about Walker's driving to Durham and that Durham's failure "to take corrective action when notified of Walker's egregious behavior is not only negligent, but so outrageous that it cannot be tolerated in a civilized society."  Finally, Cothran averred that Walker was using his cell phone at the time of the bus crash and that Durham "failed to train or take such action as would have prohibited Walker from use of a cell phone while driving a school bus."

Durham concedes on appeal that Cothran alleged reckless conduct on its part, but it asserts that the alleged conduct is neither extreme nor outrageous, as required by governing law.  Durham notes that "[t]he outrageous conduct requirement is a high standard which has consistently been regarded as a significant limitation on recovery," *Doe*, 154 S.W.3d at 39, and argues that Cothran failed to meet that standard because her allegations "are not dissimilar from those commonly made against transportation service providers whose

employees are alleged to have caused fatal accidents" and amount to no more than "'[p]oor management [and] deviations from business practices,'" *see Rhodes v. Bates Rubber, Inc.*, No. 1:19-cv-01030-STA-jay, 2019 WL 2723237, at *5 (W.D. Tenn. June 27, 2019). Such allegations, Durham posits, are not "unusual" enough to state a claim for reckless infliction of emotional distress.

Durham points out that the element of outrageous conduct "is an exacting standard" meant to filter out "fraudulent and trivial claims." *Miller*, 8 S.W.3d at 614. We agree. There is no indication in the record before the Court that Cothran's claims are fraudulent— and they are certainly not trivial.

Durham also calls our attention to two emotional distress cases based on intentional acts of the defendant as examples of the type of "exceptional" conduct that may qualify as outrageous and to show why its own conduct does not rise to that level. *See Lourcey*, 146 S.W.3d at 52 (where defendant estate's decedent instructed plaintiff to call 911 because wife was having a seizure and then proceeded to shoot both wife and himself in the head in the presence of plaintiff); *Levy v. Franks*, 159 S.W.3d 66, 84 (Tenn. Ct. App. 2004) (where defendant made death threats and fired shots near plaintiff's home). While we agree with Durham that the conduct of the defendants in *Lourcey* and *Levy*, respectively, exemplifies actions that are extreme and outrageous, we find those cases inapposite here. Both cases involved intentional conduct directed at the plaintiffs; here, we are dealing with reckless conduct. Moreover, in *Lourcey*, the decedent's intentional conduct posed a substantial risk of emotional harm to plaintiff; here, Durham's reckless conduct ignored a substantial risk of emotional *and* physical harm.

In the other related cases addressing whether Durham's conduct was outrageous, the plaintiffs amended their complaints to provide detailed allegations regarding the bus driver's egregious behavior including prior accidents, prior records of speeding, and prior behavior aimed at injuring the children. Cothran, however, never made such detailed allegations. Rather, she made general allegations about Durham's failure to fulfill its obligation to keep the students safe and to address Walker's behavior. These allegations, without more, do not meet the high standard for alleging outrageous conduct required by our Supreme Court. Nor does Cothran's allegation that Walker was using his cell phone at the time of the accident render Durham's conduct outrageous. She does not state how Durham failed keep the students safe or what it knew about Walker's driving conduct and when it knew it with any degree of specificity. Cothran only alleges the statutory violations commonly alleged in personal injury cases and lacks the detail provided by other plaintiffs to support the outrageous conduct element.[7] We cannot write the plaintiff's complaint for her, nor can we import allegations made by other plaintiffs into Cothran's claims. Under these circumstances, we are unable to conclude that Cothran's allegations show that

---

[7] Cothran alleges that Durham should be imputed with Walker's negligence per se in violating Tennessee Code Annotated sections 55-8-115, -120, -123, -136, -152, -153 and 55-10-205.

Durham's actions went beyond poor management and amount to conduct "so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Medlin*, 398 S.W.2d at 274. The trial court erred in finding that Cothran sufficiently alleged the element of outrageous conduct.

## B. Reasonably Foreseeable Scope of the Risk

With respect to this issue, the trial court found that Durham "had knowledge prior to the accident that any intentional or reckless injury done to the children would have an adverse impact on plaintiff's emotional state" and that she "falls within the reasonably foreseeable scope of persons who could be injured by the particular substantial and unjustifiable risk[] consciously disregarded by the tortfeasor."

A brief review of the facts in *Doe* is instructive. The plaintiffs in that case had been sexually molested as minor boys by a priest formerly employed by the Roman Catholic Diocese of Nashville. *Id.* at 24–30. They sued the Diocese for reckless infliction of emotional distress, alleging that—despite being fully aware that the former priest had a long history of sexually molesting numerous boys—the Diocese recklessly permitted the priest to have continued access to male minors, including plaintiffs, through Diocese-related activities and events for more than two decades. *Id.* This Court affirmed the trial court's grant of summary judgment in favor of the Diocese, concluding that a reckless infliction of emotional distress claim must be based on conduct that was directed at the plaintiff. *Id.* at 31. Our Supreme Court, however, reversed and held that "to be actionable, reckless infliction of emotional distress need not be based upon conduct that was directed at a specific person or that occurred in the presence of the plaintiff." *Id.* at 24. The Court reasoned that "the directed-at requirement is incompatible with the concept of recklessness insofar as reckless misconduct has a general or random quality." *Id.* at 39 (citations omitted). Having set aside the directed-at requirement, the Court explained that "[t]he elements of intentional and reckless infliction of emotional distress themselves perform an important gatekeeping function for the purposes of ensuring the reliability of claims and of preventing liability from extending unreasonably." *Id.* In this context, the Court specifically stated that a "reckless tortfeasor will be liable *only* to persons who fall within the reasonably foreseeable scope of the particular substantial and unjustifiable risk consciously disregarded by the tortfeasor." *Id.* at 39–40 (citations omitted) (emphasis added).

Here, Durham acknowledges that under *Doe*, "a claim of reckless infliction of emotional distress need not be based upon conduct that was directed at a specific person or that occurred in the presence of the plaintiff." 154 S.W.3d at 38–39. Durham argues, however, that the plaintiff does not fall within the reasonably foreseeable scope of the risk consciously disregarded by the tortfeasor. Durham argues that the following factors are probative on this issue: whether the plaintiff witnessed the injury-producing accident; whether the plaintiff went to the scene of the accident before it was materially altered; and

whether the plaintiff had a close and intimate personal relationship with the accident's victims. Durham submits that neither the trial court nor Cothran has explained how a school principal who voluntarily visited the scene of the bus crash after receiving notice that it had occurred falls within the reasonably foreseeable scope. We agree with Durham.

Although Tennessee appellate courts had not specifically articulated the "reasonably foreseeable scope" constraint on recovery until *Doe*, this limitation is consistent with our Supreme Court's recognition that the requirements of a RIED claim must "perform an important gate-keeping function for the purposes of ensuring the reliability of claims and of preventing liability from extending unreasonably." *Id.* at 39. Our task here then, as recognized in the order granting this Rule 10 extraordinary appeal, is to determine whether Cothran sufficiently alleged that she is a person who falls within the reasonably foreseeable scope of the particular substantial and unjustifiable risk consciously disregarded by Durham.[8] In other words, did Cothran sufficiently allege that she was among the class of persons for whom there was a high degree of probability that severe emotional distress would follow after the bus crash? *See id.* at 39–40 (citing *Tommy's Elbow Room v. Kavorkian*, 727 P.2d 1038, 1044 (Alaska 1986); *Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976)).

We acknowledge that neither our Supreme Court nor this Court has outlined the parameters of the inquiry to determine whether a person falls within the reasonably foreseeable scope of plaintiffs in a RIED claim. Appellate court opinions subsequent to *Doe* did not need to address whether the plaintiffs had met the "reasonably foreseeable scope" requirement because, generally, the plaintiff was either a person immediately subject to the defendant's outrageous conduct or a family member of that person. *See, e.g.*, *Rogers*, 367 S.W.3d at 211 (after cemetery became overgrown and ill-maintained, mother sued cemetery where son had been buried); *Lourcey*, 146 S.W.3d at 49–50 (defendant purposely shot his wife and then himself in the plaintiff's presence); *Harris v. Horton*, 341 S.W.3d 264, 266 (Tenn. Ct. App. 2009) (mother and sister of man who died in a motor vehicle accident sued paramedic who circulated photos of the accident scene and decedent's corpse at a driver's education class). The circumstances in those cases leave little doubt that the plaintiffs were persons who fell within the reasonably foreseeable scope of the particular substantial and unjustifiable risk consciously disregarded by the defendants.

Our Supreme Court's jurisprudence concerning the role of foreseeability in the related claim of negligent infliction of emotional distress is instructive. In *Ramsey*, a son sued for NIED after he witnessed a vehicle strike and kill his mother when she got out of the car to check the mail at the son's driveway while he remained seated inside the car.

---

[8] Although the Court specifically identified the issue of whether plaintiff falls within the reasonably foreseeable scope in the order granting Durham's Rule 10 application for extraordinary appeal, Cothran did not argue this issue in her brief.

931 S.W.2d at 528. The son remained in the car as the accident occurred. *Id.* The Court of Appeals affirmed the trial court's grant of summary judgment in favor of the defendant on the basis of plaintiff's failure to demonstrate that "his claim relate[d] to fear for his own safety and not for that of his mother." *Id.* at 529. The Supreme Court reversed and allowed the claim to proceed, holding that to recover for emotional injuries sustained as a result of death or injury of a third person, as Cothran seeks to do here, a plaintiff must show that the emotional injuries were a foreseeable result of the defendant's negligence. *Id.* at 531. This inquiry "requires consideration of a number of relevant factors," including the plaintiff's awareness of the event or accident and plaintiff's physical location at the time of the event or accident, the degree of injury to the third person, and the plaintiff's relationship to the injured third party. *Id.* at 531–32; *see also Lourcey*, 146 S.W.3d at 52–53 (applying these foreseeability factors). Importantly, the *Lourcey* Court underscored: "Although we discussed several considerations in analyzing foreseeability in *Ramsey*, including the plaintiff's relationship to the injured party, we did not hold that the plaintiff's relationship to the injured party was itself an element for stating or establishing a claim for negligent infliction of emotional distress." *Lourcey*, 146 S.W.3d at 53 (citing *Ramsey*, 931 S.W.2d at 531). Subsequently, as we stated above in addressing Cothran's NIED claim, the Court's decision to allow recovery by a mother who did not witness the injury-causing accident in *Eskin* was partly based on a historical recognition "that it is easily foreseeable that persons who have a close personal relationship with an injured party will suffer serious or severe emotional distress when they see someone 'near and dear' to them injured." 262 S.W.3d at 738 (citing *Ramsey*, 931 S.W.2d at 529; *Shelton*, 570 S.W.2d at 866). We discern no logical basis for applying a different approach than that used in a NIED claim to determine whether a plaintiff falls within the reasonably foreseeable scope in a RIED claim.

Having thoroughly reviewed the facts alleged in the pleadings, in light of the foregoing foreseeability principles and giving Cothran the benefit of all reasonable inferences, we have determined that she does not fall within the class of persons for whom there was a high degree of probability that severe emotional distress would follow after the bus crash. To begin with, Cothran was not the immediate subject of Durham's reckless and outrageous conduct. Durham's decision to disregard warnings it received concerning Walker's driving subjected the children on Walker's bus, not Cothran, to a substantial and unjustifiable risk of serious physical and emotional harm. Next, Cothran was neither aware of the fatal accident nor in physical proximity to the accident at the time it occurred. She learned about the crash before going to the scene of the crash and later visiting the hospital. But going to the scene of the crash and the hospital *after* having notice of what had occurred and identifying injured or deceased children there do not bring Cothran within the reasonably foreseeable class of persons who were placed at a substantial and unjustifiable risk of emotional distress. With respect to the foreseeability analysis, our Supreme Court has noted that "[o]bviously, it is more foreseeable that one witnessing or having a sensory observation of the event will suffer effects from it," explaining:

The impact of personally observing the injury-producing event in most,

although concededly not all, cases distinguishes the plaintiff's resultant emotional distress from the emotion felt when one learns of the injury or death of a loved one from another, or observes pain and suffering but not the traumatic cause of the injury.

*Ramsey*, 931 S.W.2d at 531 (quoting *Thing v. La Chusa*, 771 P.2d 814, 828 (Cal. 1989)); *see also Eskin*, 262 S.W.3d at 738 (holding that "plaintiffs who have a close personal relationship with an injured party and who arrive at the scene of the accident while the scene is in essentially the same condition it was in immediately after the accident" may recover for emotional distress); *Lourcey*, 146 S.W.3d at 55 (holding that the plaintiff could survive a Rule 12.02(6) motion to dismiss because she witnessed the defendant shooting his wife and himself, even though the plaintiff was not related to the defendant or his wife).

Here, Cothran observed disoriented and injured children when she arrived at the scene of the crash, but she did not personally observe the injury-producing event. *See Ramsey*, 931 S.W.2d at 531. Moreover, as we already discussed in addressing Cothran's NIED claim, she did not share with any of the injured and deceased children the requisite familial type of relationship necessary to sustain her claim. *Id.* at 528; *Eskin*, 262 S.W.3d at 738. In limiting recovery for RIED to persons falling within the reasonably foreseeable scope of the risk disregarded by the tortfeasor, our Supreme Court implicitly held that there are boundaries to the class of persons who might recover under that cause of action. Cothran falls outside those boundaries. We hold that she is not, as a matter of law, a reasonably foreseeable plaintiff under the facts of this case.

In reaching this holding, we are aware of the Supreme Court's pronouncement that "reckless infliction of emotional distress need not be based upon conduct that was directed at a specific person or that occurred in the presence of the plaintiff." *Doe*, 154 S.W.3d at 38–39. Our holding is not predicated on the fact that Durham's disregard for the safety of the children was not directed at Cothran or that such disregard did not occur in her presence. Rather, our holding is based upon our determination that Cothran is not a reasonably foreseeable plaintiff in this case. We reverse the trial court's judgment as to the second issue in this appeal.

## CONCLUSION

We reverse the judgment of the Hamilton County Circuit Court and remand the case for entry of an order granting Durham's motion to dismiss for failure to state a claim upon which relief can be granted. Costs of this appeal are taxed equally between appellants and appellee, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE